ORIGINAL

FILED
JUN 17 2008
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

| | |
|---|---|
| ALL FLORIDA NETWORK CORP., Plaintiff, vs. THE UNITED STATES, Defendant. | Case No. 08-441 C (Judge ______) |

## COMPLAINT

Plaintiff, All Florida Network Corp. ("AFNC"), files this complaint and alleges as follows:

## INTRODUCTION

1. In the Medicare Modernization Act of 2003 ("MMA"), Congress mandated that the Centers for Medicare and Medicaid Services ("CMS") (the agency within the United States Dep't of Health and Human Services ("HHS") that administers the Medicare program) establish a competitive bidding program for certain Durable Medical Equipment, Prosthetics, Orthotics, and Supplies ("DMEPOS" or "DME") items and services.

2. The program is being implemented in two phases. Round One, which is the subject of this action, takes place in 2007 – 2008 and involves competitive bidding areas ("CBA") drawn from ten of the nation's largest metropolitan statistical areas ("MSA"), including the Miami-Fort Lauderdale-Miami Beach area, where Plaintiff bid.

3. CMS issued Requests for Bids ("RFB") in the CBAs. Suppliers who meet enrollment, accreditation and financial criteria can submit bid applications by a certain date. The bids are submitted electronically, but significantly, some of the backup information in support of a bid – *e.g.*, financial statements and credit reports for the



de la O ▪ Marko ▪ Magolnick ▪ Leyton
TELEPHONE 305/285-2000 3001 S.W. 3RD AVENUE, MIAMI, FLORIDA 33129 FACSIMILE 305/285-5555

supplier – must be submitted in hardcopy. When the bidding is closed, CMS calculates a composite bid for each product category, then determines the "winning suppliers," *i.e.*, the low bidders who can collectively supply enough DME items throughout the MSA.

4. As industry observers and commentators have noted in overwhelming numbers, the entire process behind this new system has been riddled with errors, *e.g.*, suppliers' applications being disqualified for failing to provide financial documentation, when those suppliers, in fact, submitted everything that they were supposed to.[1]

5. This is precisely what happened to Plaintiff, a bidding group whose members face total financial ruin as a result of CMS' error and whose (often elderly) customers face uncertainty and confusion in acquiring the DME products that they cannot live without. It is urgently necessary that Round One be enjoined to correct the error.

**JURISDICTION AND STANDING**

6. This Court has jurisdiction over this bid protest. *See* 28 U.S.C. § 1491(b).

7. Plaintiff is an "interested party" because it submitted a bid in response to the Round One RFB issued in the South Florida CBA.

---

[1] Massive processing problems led to the bidding window deadline being hastily extended three times (on the eve of the original 07.13.07 deadline, the deadline was extended to 07.20.07, then it was extended to 07.27.07, and then (on 07.27.07), it was extended to 09.25.07). Despite the delays, the process has been plagued with errors. Suppliers were rejected because they supposedly didn't meet accreditation requirements when they had been properly accredited by the deadline; Suppliers were rejected based on criteria that was never communicated to bidders; Identical bids were calculated for multiple bid areas, suggesting flaws in the calculation process (as reaching identical bid prices absent error is highly improbable mathematically); Just days before the bid window closed, the RFB rules were abruptly changed, without alerting bidders (previously, the RFB said that 10 business days before bidding ends, suppliers will be notified if they are missing hard copy attachments; two days before bidding closed, the web site for submitting the bids said that the system would stay open an additional 15 days after bidding ends so that suppliers could check the site to see if their hard copy materials were received). *Action Alert, available at* http://capwiz.com/vgm/issues/alert/?alertid=11229556 (last visited 05.22.08). Scores of suppliers were disqualified for allegedly failing to submit proper financial documentation, when they, in fact, can prove that they submitted complete applications. Industry Battles Bungled Bid Exclusions in Congress, Court, available at http://www.vgm.com (last visited 05.22.08). Indeed, within a week of suppliers receiving notices of disqualification, AAHomecare – an industry advocacy group – received more than 150 complaints of improper disqualification in virtually all the MSAs.



**de la O ▪ Marko ▪ Magolnick ▪ Leyton**

TELEPHONE 305/285-2000 3001 S.W. 3RD AVENUE, MIAMI, FLORIDA 33129 FACSIMILE 305/285-5555

## PARTIES

8. Plaintiff is a network of DME providers based in Miami, Florida, who joined together to submit a bid in the Round One competitive bidding in the South Florida CBA.

9. Defendant is the United States, acting by and through the HHS-overseen Centers for Medicare and Medicaid Services ("CMS") and its Competitive Bidding Implementation Contractor ("CBIC").

## FACTUAL BACKGROUND

### I. OVERVIEW OF THE ROUND ONE COMPETITIVE BIDDING PROGRAM.

10. Medicare establishes a program of health insurance for the elderly and disabled, and payment for covered medical services provided to eligible Medicare beneficiaries. 42 U.S.C. § 1395c, 1395k, 1395w-22, 1395w-102. HHS is responsible for promulgating regulations needed to carry out the administration of the insurance programs established by Medicare. *Id.* at § 1395hh(a)(1).

11. One such regulation – implemented in response to Section 302 of the MMA – establishes a competitive bidding program whereby suppliers of DME products and networks of suppliers are invited to submit bids offering to furnish items or services at a set price. HHS began phasing in the program at great speed in 2007 – 2008 with Round One, in which CMS issued a RFB in ten of the nation's largest MSAs, including the Miami-Fort Lauderdale-Miami Beach MSA (the "South Florida CBA").[2]

12. Within a certain window of time, eligible bidders – including networks such as Plaintiff – had to submit (a) an electronic bid for up to 10 product categories,[3]

---

[2] Round Two follows immediately on Round One's heels in 70 more MSAs in 2008 – 2009. The MMA authorizes the HHS to implement the program in "additional areas" after 2009.

[3] The product categories for the South Florida MSA are: (1) Oxygen Supplies and Equipment; (2) Standard Power Wheelchairs, Scooters, and Related Accessories, (3) Complex Rehabilitative Power Wheelchairs and Related Accessories, (4) Mail-Order Diabetic Supplies, (5) Enteral Nutrients, Equipment and Supplies, (6) Continuous Positive Airway Pressure (CPAP) Devices, Respiratory Asset Devices



de la O ▪ Marko ▪ Magolnick ▪ Leyton
TELEPHONE 305/285-2000 3001 S.W. 3RD AVENUE, MIAMI, FLORIDA 33129 FACSIMILE 305/285-5555

identifying, *inter alia*, the amount of Medicare reimbursement they are willing to accept for every item in a Product Category where the bidder wishes to supply DME products to Medicare beneficiaries, and (b) certain financial information in hardcopy form (such as financial statements and credit reports).

13. Winning bidders are selected by: (a) establishing a composite bid for each bidder;[4] (b) ranking composite bids in order from lowest to highest; and (c) selecting one of composite bid to be the "pivotal bid" (the lowest composite bid submitted for a product category that will, counting all bidders at or below that bid price, include a sufficient number of suppliers to meet beneficiary demand within the MSA for the items in that product category). Winning bidders are offered standardized contracts, with reimbursement rates fixed at the median of the bid prices that are at or below the pivotal bid.

14. The contracts last for three years. Losing bidders are effectively excluded from serving Medicare beneficiaries during that period, severely limiting patient choice.

## II. PLAINTIFF'S BID IN THE SOUTH FLORIDA CBA'S RFB.

15. In 2007 – pursuant to that portion of the final rule pertaining to the bidding program that required "[n]etworks [to] have signed legal contracts in place before [they] can submit a bid" – 19 primary DME providers in South Florida formed Plaintiff, for the purpose of participating in the South Florida CBA's bidding competition.

---

(RAD), and Related Supplies and Accessories, (7) Hospital Beds and Related Accessories, (8) Negative Pressure Wound Therapy (NPWT) Pumps and Related Supplies and Accessories, (9) Walkers and Related Accessories, and – for Miami and San Juan only – (10) Support Surfaces (group 2 and 3 mattress and overlays). ("Product Categories (1) – (10)," individually or "Product Categories," collectively).

[4] A composite bid is made up of (a) the predetermined weight of each item in a product category and (b) the corresponding bid amount for each item. Item (a) reflects the relative market importance of each item to the overall product category. Item (b) is the price the individual supplier is willing to provide for the item. The composite bid is calculated by multiplying (a) and (b) and summing across for all items in the product category. The item weights are the same for all bidders for the same product category. The total of all weights in a product category is equal to one (1).



de la O ▪ Marko ▪ Magolnick ▪ Leyton

TELEPHONE 305/285-2000 3001 S.W. 3RD AVENUE, MIAMI, FLORIDA 33129 FACSIMILE 305/285-5555

16. The stakes are high in the auction process. If Plaintiff was not among the winning bidders, most of the providers in Plaintiff's network would face financial ruin. These providers depend on Medicare reimbursements for 50 – 90% of their gross revenues (roughly 70% these providers depend on Medicare for half of their income); losing these revenues would force many of these providers to shut down within a year.

17. Accordingly, Plaintiff carefully laid the groundwork for a successful bid:

A. Plaintiff carefully selected proven providers and subcontractors who, together, would form one of – if not the – most robust networks participating in the South Florida CBA bid, in terms of the ability to satisfy beneficiary needs and to submit a low bid price. Indeed, many providers applied to be part of Plaintiff's network, but were rejected because they did not meet Plaintiff's strict internal requirements.

B. Plaintiff insisted that all primaries and subcontractors in the network be appropriately accredited early, *i.e.*, before Plaintiff submitted its bid. Plaintiff held seminars for its members about how to secure timely accreditation, physically inspected all unaccredited entities to confirm their capacity and inventory, and retained a consultant to assist members who needed guidance on accreditation issues.

C. To avoid any risk that it would run afoul of federal antitrust laws – a concern about bidding networks that has been raised by CMS – Plaintiff retained the VGM Group, a national organization that provides support and guidance to Home Medical Equipment providers nationwide, to take all the bids from Plaintiff's individual providers (who did not share their bid prices with each other) and

calculate Plaintiff's weighted network bid. VGM also was retained to oversee the gathering of all the financial information that Plaintiff's members had to submit, and to deliver those materials, in hardcopy form, to CMS/CBIC in connection with Plaintiff's bid.

D. Chori Corp. (d/b/a Cobra Medical Equipment, Inc.; "Cobra"), a South Florida supplier in Plaintiff's network, secured Bidder No. 1000155.

18. Suppliers in Plaintiff's group then completed worksheets developed by VGM for each Product Category. The worksheets are self-populating spreadsheets that identify each item (by HCPC code) in a Product Category and its then-current allowable Medicare price in Florida, and asks each supplier to fill-in how much of that item the supplier is able to supply to the CBA, the item's cost per unit, the operating cost per unit and the desired profit percentage per unit. With that information, the worksheet generated a Bid Amount per unit for the item, and the percentage discount off the then-current allowable price for that item. That information was collected for all items in each Product Category and aggregated by VGM into a Network Bid. After careful review and calibration to ensure that the numbers and capacity assessments were realistic and put Plaintiff in the best possible position to win the bid,[5] a final composite bid was created.

19. At the same time, VGM was gathering all the financial information that had to be submitted in hardcopy form along with the electronically-submitted bid. VGM used a checklist derived from the final rules governing the bidding process.

---

[5] VGM also weighted the bids on each item based on the experience and track record of the provider, so that Plaintiff and CMS would be especially confident that Plaintiff is able to deliver the DME items at the Medicare reimbursement rates reflected in Plaintiff's bid. By contrast, it is now coming to light that many "winning bidders" cannot serve the needs of the CBA and/or cannot realistically live with their bid price.

20. On 07.19.07, Plaintiff submitted its bid electronically, months before the *initial* deadline (as noted in n.1, *infra*, the deadline was repeatedly postponed at the last minute, giving an unfair advantage to late-comers and bidders who dragged their feet).

21. Contemporaneously, VGM timely submitted, in a single package and via Federal Express Overnight Mail, all the information that CMS required in hardcopy form. Before sending it out, VGM had satisfied itself that everything on its checklist had, in fact, been supplied by every supplier in Plaintiff's group. CMS timely received the package.

22. On 09.25.07, the Bidding Window closed.

23. Given that it met every eligibility, financial and accreditation requirement, the fact that its suppliers were able to supply DEM products throughout the South Florida CBA, the fact that its bids were lean and competitive, and the fact that its application was complete after independent review, Plaintiff had every reason to believe that it would be among those offered contracts for all 10 Product Categories.

## III. CMS' WRONGFUL DISQUALIFICATION OF PLAINTIFF'S BID.

### A. The First Set of Reasons CMS Offered for Plaintiff's Disqualification (on 03.20.08) Are Completely, Verifiably Erroneous.

24. On Thursday, 03.20.08 – the day winning bidders were announced – CMS advised Plaintiff via correspondence that it had been disqualified from Round One of the South Florida CBA, on the grounds that Plaintiff purportedly failed to meet enrollment standards specified in 42 CFR § 424.57(c) and purportedly failed to submit the financial documentation called for by the RFB ("BSE-1" and "BSE-4," respectively). *See* Ex. A.

25. On Friday, 03.21.08, Plaintiff contacted CMS for details, and discovered that:

A. BSE-1 was based on CMS' finding that one of Plaintiff's providers – Coast-To-Coast Medical Equip., Inc. ("CTC") – was not eligible to participate in the bidding competition.



de la O ▪ Marko ▪ Magolnick ▪ Leyton
TELEPHONE 305/285-2000 3001 S.W. 3RD AVENUE, MIAMI, FLORIDA 33129 FACSIMILE 305/285-5555

B. BSE-4 was based on CMS' claim that five members of Plaintiff's network had not submitted the financial information called for by the RFB: CTC (allegedly missing 2004, 2005 and 2006 income tax statement); Cobra (allegedly missing 2005 income tax statement); Dade Medical, Inc. (allegedly missing 2005 and 2006 income tax statement and a credit score); Hometown Medical Equip. & Supplies, Inc. (allegedly missing 2007 balance sheet); and RA Home Medical Equip. (allegedly missing 2004, 2005 and 2006 income tax statement).

26. Plaintiff immediately investigated, and discovered that CMS was wrong as to all grounds for disqualification. As to BSE-1, Plaintiff had – months before – confirmed with CMS, in writing, that CTC had withdrawn from Plaintiff's network.

A. On 10.01.07, Plaintiff advised CBIC, in a letter delivered via Federal Express Overnight Mail (the "10.01.07 Letter"), that CTC "has informed the network that at they are withdrawing their request to participate in [Plaintiff's] network competitive bid," and the letter attached correspondence from CTC's counsel formally requesting withdrawal.

B. That day, in an email message to CBIC entitled "PROVIDER THAT WILL WITHDRAW FROM THE NETWORK," Plaintiff attached a copy of the 10.01.07 Letter, and noting that, despite CTC's withdrawal, "[t]he bid numbers will remain the same."

C. On 10.04.07, CBIC emailed Plaintiff, acknowledging CTC's withdrawal, thanking Plaintiff "for notifying the CBIC of this matter regarding withdrawal from network membership and for the contact



**de la O ▪ Marko ▪ Magolnick ▪ Leyton**
TELEPHONE 305/285-2000 3001 S.W. 3RD AVENUE, MIAMI, FLORIDA 33129 FACSIMILE 305/285-5555

information provided." Copies of the foregoing materials are attached as Ex. B.

27. As to BSE-4, a multi-layered internal and independent review confirmed that Plaintiff submitted all of the financial documentation called for by the RFB. Each supplier in Plaintiff's network checked to ensure that all items were furnished to Plaintiff's counsel, Plaintiff's counsel confirmed that he had a full set of items from each supplier before submitting the materials to VGM, and VGM again confirmed – using a checklist derived from the bidding rules – that it had a full set of items from each supplier before sealing the crate and sending it to CMS via Federal Express Overnight Mail.

**B. <u>CMS' Investigation</u>.**

28. On Monday, 03.24.08, Plaintiff contacted CMS, gave it the information set forth in ¶¶ 26 – 27, and asked it to rescind the disqualification and consider Plaintiff's bid. CMS told Plaintiff that it would review the file and respond within 30 days.

29. On Wednesday, 03.26.08, Plaintiff asked CMS when Plaintiff could expect a response, by what means, and what would happen if CMS concluded that Plaintiff had been wrongfully disqualified. That day, CMS responded via email:

> Our records indicate you contacted our office on March 21, 2008, regarding financial documentation. Your issue has been forwarded to the financial analyst for the Competitive Bidding Implementation Contractor (CBIC) to verify every document received with your bidder number. CBIC will notify you by e-mail within thirty business days of the results of the research. We cannot advise of contract decisions until after the evaluation has been completed.

*See* Ex. C.

30. As the 30-day deadline drew near, and no decision had been issued, Plaintiff accelerated its efforts to communicate with CMS:


de la O ▪ Marko ▪ Magolnick ▪ Leyton
TELEPHONE 305/285-2000 3001 S.W. 3RD AVENUE, MIAMI, FLORIDA 33129 FACSIMILE 305/285-5555

Case No. ____________________

A. On Wednesday, 04.16.08, Plaintiff spoke with a CMS representative about the status of the review, and Plaintiff asked to speak with a supervisor.

B. On Thursday, 04.17.08, a CMS representative contacted Jack Marquez, the President of Cobra (the primary bidder in Plaintiff's group and the person who had been monitoring CMS' review), and reassured him that the results of the review were forthcoming. Marquez again asked to speak with a supervisor.

C. On Friday, 04.18.08, a CMS supervisor called Plaintiff. Plaintiff noted that Saturday, 04.19.08, was the deadline for the review to be completed, and asked if he could be advised of the ruling now (the last business day before the deadline). The supervisor said that it was 30 business days, not calendar days, but reassured him that CMS would issue a ruling by Tuesday, 04.22.08.

**C. The Second Set of Reasons CMS Offered for Plaintiff's Disqualification (on 04.21.08) <u>Are Almost Entirely New and Equally Erroneous</u>.**

31. On Monday, 04.21.08, CMS sent its decision via email to Plaintiff. In it, CMS failed to mention (a) BSE-1 altogether, tacitly conceding that Plaintiff was correct regarding the issue raised in it, or (b) any (but one) of the supposedly-missing documents that formed the basis of BSE-4, tacitly conceding that Plaintiff was correct on that issue as well.

32. Instead, CMS now claimed that a *new,* different set of financial documents were not furnished to CMS, thus justifying Plaintiff's disqualification from the bidding process:

> [W]e have reexamined your bid(s), and have confirmed that 2005 income statement for Chori Corp.; 3 years income statements for Medical Respiratory Rentals, Inc.; and 3



de la O ▪ Marko ▪ Magolnick ▪ Leyton
TELEPHONE 305/285-2000 3001 S.W. 3RD AVENUE, MIAMI, FLORIDA 33129 FACSIMILE 305/285-5555

> years income statements for JAD Medical Equipment Inc. are missing. Therefore, we continue to be unable to accept these bid(s). When the program begins on July 1, 2008, Medicare will not reimburse you for furnishing these competitively bid items to Medicare beneficiaries with the competitive bidding area(s).

Ex. D.

33. CMS is wrong as to all grounds for disqualification. There is only one financial document that CMS claimed was missing in both the first and second disqualification letters (the 2005 income tax statement for Chori Corp.). That document was provided to CMS. All the other documents were also provided.

## IV. THE DISASTEROUS IMPACT OF THE WRONGFUL DISQUALIFICATION ON PLAINTIFF'S MEMBERS.

34. But for the erroneous disqualification, Plaintiff would have been among the winning bidders in the South Florida CBA in almost all of the 10 Product Categories. This is confirmed in an analysis by VGM, which compares (a) Plaintiffs composite bid for each Product Category (Plaintiffs Composite Bid) to (b) a composite bid for each Product Category generated based on the actual prices that CMS will pay under the standardized contracts offered to winning bidders (the Median Winning Composite Bid).

35. To generate the Median Winning Composite Bid for each Product Category, VGM multiplied the reimbursement rate that the government will now pay for each DME item in a given Product Category ("Single Payment Amounts," which represent the median point of winning bids (*see* ¶ 13 above)) by the weight assigned to each such item, then added together all the resulting amounts for each item in a Product Category. The resulting Median Winning Composite Bid is the median bid for all winning bidders in a Product Category. So half of the winning bidders in a given Product Category had an individual composite bid *above* the Median Winning Composite Bid.

Case No. ______________________

36. Significantly, Plaintiffs Composite Bid (which appears first below) is lower than or very near the Median Winning Composite Bid in every Product Category:

A. Product Category (1): 67.06 vs. 85.99

B. Product Category (2): 360.887 vs. 391.251

C. Product Category (3): 565.409 vs. 666.409.

D. Product Category (4): 23.491 vs. 17.221.

E. Product Category (5): 1.164 vs. 1.033.

F. Product Category (6): 107.678 vs. 106.582.

G. Product Category (7): 820.906 vs. 875.569.

H. Product Category (8): 116.910 vs. 104.762.

I. Product Category (9): 69.209 vs. 65.693.

J. Product Category (10): 3,326.138 vs. 4,315.468.

37. Plaintiffs Composite Bid is lower than the Median Winning Composite Bid in Product Category (1), (2), (3), (7) and (10), which means that Plaintiffs bid would have ranked among the lowest bids submitted by *winning* bidders in those Product Categories. Thus, Plaintiff would have been among the winning bidders in these Product Categories but for its disqualification. Moreover, Plaintiff's Composite Bid is just above the Median Winning Composite Bid in Product Category (5), (6) and (9), making it likely that Plaintiff would have been among the "winning bidders" in those Product Categories, as well.

38. Disqualifying Plaintiff will put the providers in Plaintiff's network out of business and it will hurt the senior citizens who those providers serve (many of whom will not be able to easily get DME items they urgently need from the "winning bidders," who do not have a business presence in many of South Florida's local communities).



**de la O ▪ Marko ▪ Magolnick ▪ Leyton**
TELEPHONE 305/285-2000 3001 S.W. 3RD AVENUE, MIAMI, FLORIDA 33129 FACSIMILE 305/285-5555

## COUNT I – AGENCY ACTION IN DISQUALIFYING PLAINTIFF IS ARBITRARY, CAPRICIOUS AND AN ABUSE OF DISCRETION

Paragraphs 1 – 38 are realleged and incorporated as if fully set forth herein.

39. Plaintiff is an "interested party," as it was an actual bidder and it has a direct economic interest in the procurement.

40. The procurement error set forth in ¶¶ 24 – 33 above, prejudiced Plaintiff.

41. But for the procurement errors, it is certain that Plaintiff would have been offered contracts in Product Categories (1), (2), (3), (7) and (10), and likely Plaintiff would have been offered contracts in Product Categories (5), (6) and (9).

42. As can be seen by CMS' shifting, inconsistent justifications, the decision to disqualify Plaintiff lacked a rational basis, was arbitrary and capricious, and constituted an abuse of discretion.

WHEREFORE, Plaintiff requests that the Court grant the following relief:

1. A preliminary injunction – issued on an expedited basis and before the Round One contracts become effective on 07.01.08 – requiring that the United States offer Plaintiff the same standardized contract it offered to "winning bidders" in Product Categories (1) – (3), (5) – (7), and (9) – (10) in the Round One DMEPOS Competitive Bidding Program for the South Florida CBA;
2. A declaratory judgment that Plaintiff should not have been disqualified from consideration in the Round One DMEPOS Competitive Bidding Program for the South Florida CBA;
3. An appropriate award of damages; and



de la O ▪ Marko ▪ Magolnick ▪ Leyton
TELEPHONE 305/285-2000 3001 S.W. 3RD AVENUE, MIAMI, FLORIDA 33129 FACSIMILE 305/285-5555

Case No. ____________________

4. Such other relief as the Court deems just and proper.

**DATED:** 06.16.08.

Respectfully submitted,

**DE LA O, MARKO, MAGOLNICK & LEYTON**
Attorneys for Plaintiff
3001 S.W. 3rd Avenue
Miami, Florida 33129
Telephone: 305.285.2000
Facsimile: 305.285.5555

By: ____________________ for
**David E. Marko**
Florida Bar No. 0939633
marko@dmmllaw.com
**Daniel L. Leyton** *
Florida Bar No. 0061824
leyton@dmmllaw.com

**KRAVITZ & TALAMO**
Attorneys for Plaintiff
7600 W 20th Avenue
Suite 213
Hialeah, Florida 33016
Telephone: 305.558.5300
Facsimile: 305.557.1934

By: ____________________
**Javier Talamo** *
Florida Bar No. 0721808
javier_talamo@yahoo.com

* Motions for Messrs. Leyton and Talamo to appear *pro hac vice* before this Court are forthcoming.

Palmetto GBA

CMS
CENTERS for MEDICARE & MEDICAID SERVICES

March 20, 2008

Jack Marquez
ALL FLORIDA NETWORK CORP.
2351 Nw 93Rd Ave
Miami, FL 33172

RE: ALL FLORIDA NETWORK CORP.
Bidder Number: 1000155

Dear Jack Marquez,

Thank you for bidding in the first phase of the Medicare Durable Medical Equipment, Prosthetics, Orthotics, and Supplies (DMEPOS) Competitive Bidding Program. Unfortunately, we are unable to accept your bid(s) as indicated in the enclosed chart. Please note that if your bid(s) was successful for any competitive bidding area/product category not shown on the enclosure, you will be notified in a separate letter.

When the program begins on July 1, 2008, Medicare will not reimburse you for furnishing these competitively bid items to Medicare beneficiaries within the competitive bidding area(s). You will be responsible for informing beneficiaries who seek to purchase these items from you that you are not a contract supplier for these items within the competitive bidding area(s). However, you may still receive payment for maintenance and serving of beneficiary owned items in accordance with 42 CFR 414.408(k). In addition, this decision does not prevent you from becoming a grandfathered supplier for certain rental items and oxygen and oxygen equipment, per 42 CFR 414.408(j).

This decision does not prevent you from participating in any future competitions under the Medicare DMEPOS Competitive Bidding Program.

If you have any questions, please contact the customer service center at 877-577-5331.

Sincerely,

Jean Catalano
Program Manager
Competitive Bidding Implementation Contractor

Enclosures



Exhibit "A"

## REASON CODES FOR BID DISQUALIFICATION

BSE-1: Bidder did not meet enrollment standards specified in 42 CFR 424.57(c).
BSE-2: Bidder did not submit a bona fide bid that complies with all the terms and conditions contained in the request for bids (RFB).
BSE-3: Bidder did not meet applicable quality standards developed by CMS in accordance with section 1834(a)(20) of the Social Security Act/was not accredited by a CMS-approved accreditation organization.
BSE-4: Bidder did not submit along with its bid the applicable financial documentation specified in the request for bids (RFB).
NR-1: Bidder did not meet network requirements.
CO-1: Bidder did not submit a single bid for commonly-owned or controlled suppliers.
FS-1: Bidder did not meet financial standards.

**Bidder Number: 1000155**

| Product Categories / CBAs | Oxygen Equipment and Supplies | Standard Power Wheelchairs, Scooters and Related Accessories | Complex Rehabilitative Power Wheelchairs and Related Accessories | Mail Order Diabetic Supplies | Enteral Nutrients, Equipment and Supplies | CPAP, RAD and Related Supplies and Accessories | Hospital Beds and Related Accessories | NPWT Pumps and Related Supplies and Accessories | Walkers and Related Accessories | Support Surfaces |
|---|---|---|---|---|---|---|---|---|---|---|
| Miami-Fort Lauderdale Miami Beach,FL | BSE1 BSE4 | BSE1 BSE4 | BSE1 BSE4 | BSE1 BSE4 | BSE1 BSE4 | BSE1 BSE4 | BSE1 BSE4 | BSE1 BSE4 | BSE1 BSE4 | BSE1 BSE4 |

**Please see document entitled "Reason Codes for Bid Disqualification" for the disqualification reason associated with each code listed on this chart.**

at&t [Print] [Close]

From: CBIC.ADMIN@palmettogba.com
To: JACK0708@BELLSOUTH.NET
Subject: FW:PROVIDER THAT WILL WITHDRAW FROM THE NETWORK
Date: Thu, 4 Oct 2007 16:01:50 +0000

Dear Mr. Marquez:

Thank you for notifying the CBIC of this matter regarding withdrawal from network membership and for the contact information provided.

Please continue to monitor www.dmecompetitivebid.com website for additional information.

Thank you.

This e-mail is confidential and subject to privilege:
http://www.PalmettoGBA.com/disclaimer

------------------( Forwarded letter 1 follows )--------------------
Subject: PROVIDER THAT WILL WITHDRAW FROM THE NETWORK
From: padministrator@www.pgba.com.PALM
To: cbic.admin
Date: Mon, 1 Oct 2007 12:57:25 -0400
X-HDT-HopCount: 1

Please email your response to JACK0708@BELLSOUTH.NET

Name: JACK MARQUEZ

THE FOLLOWING LETTER IS BEING MAIL TO CBID PALMETTO GBA. THE FOLLOWING PROVIDER HAS WITHDRAWED FROM THE NETWORK. THE BID NUMBERS WILL REMAIN THE SAME. PLEASE CALL ME IF ANY QUESTION AT (305) 629-2633 JACK MARQUEZ. THANKS

KRAVITZ & TALAMO L.L.P.
Suite 213
7600 W 20 Avenue
Hialeah, Florida 33016
Email: Javier.talamo@yahoo.com

Javier Talamo
Tel: (305)558-5300
Fax: (305)557-1934

October 1, 2007 Via Federal Express

CBID
BUILDING 200 SUITE 400
PERIMETER PARKWAY
AUGUSTA, GA 30909

Dear Sir/Madam:

This office represents Chori Chorp and All Florida Network Inc., a bidder in the competitive bid for the Medicare home medical equipment contract for the South Florida MSA/CBA. Chori Chorpâ€™s provider number is 1123190001 and their bidder number is 1000155.

This letter is to inform you that Coast to Coast Medical Equipment has informed the network that they are withdrawing their request to participate in All Floridaâ€™s network competitive bid. Enclosed you will find a letter form Coast to Coastâ€™s attorney withdrawing their request to bid. Please delete Coast to Coast from our bid. Below please find the information on the provider to be deleted:

COAST TO COAST

Exhibit "B"

OWNER : JOSE TORRES
ADDRESS: 2887 SOUTHWEST 69 COURT, MIAMI, FLORIDA 33155
MEDICARE # 1110270001
NPI#1902835754
TAX # 650645366
PHONE # (305) 265-0600
If you have any questions on the foregoing do not hesitate to contact the undersigned at 305-558-5300 or Jack Marquez at 305-629-2633.
Cordially
Javier Talamo
Enclosure

COPY

**KRAVITZ & TALAMO L.L.P.**

Suite 213
7600 W 20 Avenue
Hialeah, Florida 33016
Email: Javier.talamo@yahoo.com

Javier Talamo
Tel: (305)558-5300
Fax: (305)557-1934

October 1, 2007

Certified Mail 70060810000492868289

CBIC
P.O.BOX 907
AUGUSTA, GA 30999-2743

Dear Sir/Madam:

This office represents Chori Chorp and All Florida Network Inc., a bidder in the competitive bid for the Medicare home medical equipment contract for the South Florida MSA/CBA. Chori Chorp's provider number is 1123190001 and their bidder number is 1000155.

This letter is to inform you that Coat to Coast Medical Equipment has informed the network that they are withdrawing their request to participate in All Florida's network competitive bid. Enclosed you will find a letter form Coast to Coast's attorney withdrawing their request to bid.

Please delete Coast to Coast from our bid. Below please find the information on the provider to be deleted:

COAST TO COAST
OWNER : JOSE TORRES
ADDRESS: 2887 SOUTHWEST 69 COURT, MIAMI, FLORIDA 33155
MEDICARE # 1110270001
NPI#1902835754
TAX # 650645366
PHONE # (305) 265-0600

If you have any questions on the foregoing do not hesitate to contact the undersigned at 305-558-5300 or Jack Marquez at 305-629-2633.

Cordially

Javier Talamo
Enclosure

BROAD AND CASSEL
ATTORNEYS AT LAW

P.O. BOX 14010
FORT LAUDERDALE, FLORIDA 33302
TELEPHONE: 954.764.7060
FACSIMILE: 954.761.8135
www.broadandcassel.com

ROBERT N. NICHOLSON
DIRECT LINE: 954-745-5271
DIRECT FACSIMILE: 954-713-0973
EMAIL: rnicholson@broadandcassel.com

September 28, 2007

**VIA FACSIMILE AND U.S. MAIL**

Mr. Javier Talamo, Esq.
Kravitz and Talomo., LLP
7600 West 20th Ave., Ste. 213
Hialeah, Florida 33016

Re: Coast to Coast Medical Equipment

Dear Mr. Talamo:

I write to inform you that Coast to Coast Medical Equipment is hereby withdrawing its request to participate in All Florida Network, Inc.'s competitive bid for the Medicare home medical equipment contract for the South Florida MSA/CBA.

If you have any questions concerning the foregoing, please do not hesitate to contact me.

Sincerely,

BROAD AND CASSEL

Robert Nicholson

RN:rn

cc: client



Jun 16 2008 11:14AM Kravitz & Talamo, LLP. 3055571934 p.3

UNITED STATES POSTAL SERVICE

Home | Help | Sign In

Track & Confirm FAQs

# Track & Confirm

## Search Results

Label/Receipt Number: **7006 0810 0004 9286 8289**
Status: **Delivered**

Your item was delivered at 6:26 am on October 04, 2007 in AUGUSTA, GA 30901. A proof of delivery record may be available through your local Post Office for a fee.

Additional information for this item is stored in files offline.

Restore Offline Details > ? Return to USPS.com Home >

**Track & Confirm**

Enter Label/Receipt Number.

Go >

Site Map Contact Us Forms Gov't Services Jobs Privacy Policy Terms of Use National & Premier Accounts

Copyright© 1999-2007 USPS. All Rights Reserved. No FEAR Act EEO Data FOIA

at&t

[Print] [Close]

From: CBIC.ADMIN@palmettogba.com
To: JACK0708@BELLSOUTH.NET
Subject: RE:COM BID ROUND 1
Date: Wed, 26 Mar 2008 18:47:23 +0000

Dear Jack:

Thank you for your inquiry to the DMEPOS Competitive Bidding Program.

Our records indicate you contacted our office on March 21, 2008, regarding financial documentation. Your issue has been forwarded to the financial analyst for the Competitive Bidding Implementation Contractor (CBIC) to verify every document received with your bidder number. CBIC will notify you by e-mail within thirty business days of the results of the research. We cannot advise of contract decisions until after the evaluation has been completed.

Sincerely,
Competitive Bidding Implementation Contractor
Palmetto GBA

This e-mail is confidential and subject to privilege:

http://www.palmettogba.com/disclaimer
------------------( Forwarded letter 1 follows )--------------------
Subject: COM BID ROUND 1
From: padministrator@www.pgba.com.PALM
To: cbic.admin
Date: Wed, 26 Mar 2008 04:01:55 -0500
X-HDT-HopCount: 1

Please email your response to JACK0708@BELLSOUTH.NET

Name: JACK MARQUEZ

WHAT DOES "YOUR BID WILL BE REVIEWED WITHIN 30 DAYS" MEANS? WHAT TYPE OF NOTICE WILL BE RECEIVE (VIA FEDEXPRESS OR EMAIL?) WILL BIDS BE AWARDED AFTER THEY HAVE BEEN REVIEWED?

Exhibit "C"

at&t

[Print] [Close]

From: CBIC.CONTRACTS@palmettogba.com
To: jack0708@bellsouth.net
Subject: Competitive Bidding
Date: Mon, 21 Apr 2008 22:54:30 +0000

We are writing in response to the concerns you raised regarding your bid(s) submitted for the first round of the Medicare Durable Medical Equipment, Prosthetics, Orthotics, and Supplies (DMEPOS) Competitive Bidding Program. As requested, we have reexamined your bid(s), and have confirmed that 2005 income statement for Chori Corp; 3 years income statements for Medical Respiratory Rentals, Inc; and 3 years income statements for JAD Medical Equipment Inc. are missing. Therefore, we continue to be unable to accept these bid(s).

When the program begins on July 1, 2008, Medicare will not reimburse you for furnishing these competitively bid items to Medicare beneficiaries within the competitive bidding area(s). You will be responsible for informing beneficiaries who seek to purchase these items from you that you are not a contract supplier for these items within the competitive bidding area(s). However, you may still receive payment for maintenance and servicing of beneficiary owned items in accordance with 42 CFR 414.408(k). In addition, this decision does not prevent you from becoming a grandfathered supplier for certain rental items and oxygen and oxygen equipment, as set forth in 42 CFR 414.408(j).

This decision does not prevent you from participating in any future competitions under the Medicare DMEPOS Competitive Bidding Program.

Sincerely,
Competitive Bidding Implementation Contractor
Palmetto GBA

This e-mail is confidential and subject to privilege:
<http://www.PalmettoGBA.com/disclaimer>

Exhibit "D"