**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

| | | |
|---|---|---|
| ALL FLORIDA NETWORK CORP., | ) | |
| Plaintiff, | ) | Case No. 08-441 C |
| vs. | ) | |
| | ) | (Judge Lawrence M. Baskir) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

## PLAINTIFF'S EMERGENCY MOTION FOR A PRELIMINARY INJUNCTION AND REQUEST FOR AN EXPEDITED HEARING BEFORE 07.01.08

Plaintiff, All Florida Network Corp., pursuant to RCFC 7 and 5.3, requests that (a) the Court issue a preliminary injunction affording Plaintiff the opportunity to sign the standardized contracts with Medicare that were offered to "winning bidders" in Product Categories (1) – (3), (5) – (7) and (9) – (10) following the recently completed Round One DMEPOS Competitive Bidding Program for the Miami-Ft. Lauderdale-Miami Beach-FL Competitive Bidding Area (the "South Florida CBA"); and (b) the Court consider this motion on an expedited basis, so that a ruling is reached before the contracts already extended following Round One become effective on Tuesday, 07.01.08. Without temporary relief granted on an expedited basis, there is a grave risk that many, if not most, of Plaintiff's constituent members – nearly 20 South Florida DME providers and a series of subcontractors – will have to shut their businesses, lay off their employees, and stop serving their customers before a final ruling is issued.

## TABLE OF CONTENTS

TABLE OF CONSTITUTIONAL PROVISIONS,
TREATISES, STATUTES, REGULATIONS, AND CASES CITED.................................3



de la O ▪ Marko ▪ Magolnick ▪ Leyton
TELEPHONE 305/285-2000 3001 S.W. 3RD AVENUE, MIAMI, FLORIDA 33129 FACSIMILE 305/285-5555

SUCCINCT STATEMENT OF THE QUESTIONS INVOLVED ........................................ 5

CONCISE STATEMENT OF THE CASE ........................................ 5

I. OVERVIEW OF THE ROUND ONE COMPETITIVE BIDDING PROGRAM......... 5

II. PLAINTIFF'S BID IN THE SOUTH FLORIDA CBA'S RFB. ........................................ 7

III. CMS' WRONGFUL DISQUALIFICATION OF PLAINTIFF'S BID. ............... 10

A. The First Set of Reasons CMS Offered for Plaintiff's Disqualification (on 03.20.08) Are Completely, Verifiably Erroneous. ......... 10

B. CMS' Investigation. ........................................ 11

C. The Second Set of Reasons CMS Offered for Plaintiff's Disqualification (on 04.21.08) Are Almost Entirely New and Equally Erroneous. ........................................ 12

IV. THE DISASTEROUS IMPACT OF THE WRONGFUL DISQUALIFICATION ON PLAINTIFF'S MEMBERS. ........................................ 13

ARGUMENT ........................................ 15

I. STANDARDS FOR ISSUING A PRELIMINARY INJUNCTION. ......................... 15

II. A PRELIMINARY INJUNCTION IS WARRANTED HERE. ............................ 16

A. Plaintiff Is Likely To Succeed On The Merits At Trial. ................................. 16

B. Plaintiff Will Suffer Irreparable Harm If Preliminary Relief Is Not Granted. .. 18

C. The Balance of Hardships Tips In Plaintiff's Favor. ..................................... 18

D. A Preliminary Injunction Will Not Be Contrary To The Public Interest. ........ 20

III. THIS COURT HAS JURISDICTION OVER THE BID PROTEST .................... 20

A. 42 U.S.C. § 1395w-3(b)(10) Does Not Bar This Bid Protest. ....................... 20

1. § 1395w-3(b)(10) Does Not Bar All Bid Protests. ................................... 20
2. § 1395w-3(b)(10)(B) Does Not Bar Plaintiff's Bid Protest. ....................... 22
3. § 1395w-3(b)(10)(F) Does Not Bar Plaintiff's Bid Protest. ....................... 22

B. There is a Strong Presumption Favoring Judicial Review. .......................... 23

REQUEST FOR EXPEDITED HEARING ........................................ 24


de la O ▪ Marko ▪ Magolnick ▪ Leyton
TELEPHONE 305/285-2000 3001 S.W. 3RD AVENUE, MIAMI, FLORIDA 33129 FACSIMILE 305/285-5555

CONCLUSION ........ 25

CERTIFICATE OF SERVICE ........ 26

**TABLE OF CONSTITUTIONAL PROVISIONS,**
**TREATISES, STATUTES, REGULATIONS, AND CASES CITED**

*Abbott Laboratories v. Gardner*
387 U.S. 136 (1967) ........ 24

*Belbacha v. Bush*
520 F.3d 452 (D.C.Cir. 2008) ........ 24

*Bell v. Hood*
327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946) ........ 24

*BK Instrment, Inc. v. United States*
715 F.2d 713 (2d Cir. 1983) ........ 19

*Bowen v. Michigan Academy of Family Physicians*
476 U.S. 667 (1986) ........ 23,24

*Ceres Environmental Services, Inc. v. United States*
52 Fed.Cl. 23 (Fed. Cl. 2002) ........ 18
*Choctaw Mfg. Co. v. United States*
761 F.2d 609 (11th Cir. 1985) ........ 19

*EOD Technology, Inc. v. United States*
--- Fed. Cl. ---, 2008 WL 2154108, *8 (Fed. Cl. May 15, 2008 ........ 15

*FDA v. Brown & Williamson Tobacco Corp.*
529 U.S. 120 (2000) ........ 20

*FMC Corp. v. United States*
3 F.2d 424 (Fed. Cir. 1993) ........ 15

*Galen Med. Assoc. v. United States*
369 F.3d 1324 (Fed. Cir. 2004) ........ 16

*Global Computer Enter., Inc. v. United States*
81 Fed.Cl. 506 (Fed. Cl. 2008) ........ 15,18

*Hawpe Constr., Inc. v. United States*
46 Fed. Cl. 571 (Fed. Cl. 2000) ........ 17

*Information Sciences Corp. v. United States*
--- F.3d Cl ---, 2008 WL 756165, *8 (Fed. Cl. March 18, 2008) ........ 16



**de la O ▪ Marko ▪ Magolnick ▪ Leyton**
TELEPHONE 305/285-2000 3001 S.W. 3RD AVENUE, MIAMI, FLORIDA 33129 FACSIMILE 305/285-5555

*McNeil v. United States*
2007 WL 1095679 (Fed. Cl., Feb. 23 2007) ........ 24

*Sharp HealthCare v. Leavitt*
--- F.Supp.2d --- 2008 WL 927891 (S.D.Cal., April 4, 2008) ........ 21,23

*TRW Environmental Safety Systems, Inc. v. United States*
16 Cl.Ct. 520 (1989) ........ 17

*United States v. Nourse*
9 Pet. 8, 34 U.S. 8, 9 L.Ed. 31 (1835) ........ 23

*United States v. United Mine Workers*
330 U.S. 258 67 S.Ct. 677, 91 L.Ed. 884 (1947) ........ 24

*Washington Area Transit Comm'n v. Holiday Tours, Inc.*
55 F.2d 841 (D.C.Cir. 1977) ........ 17

28 U.S.C. 1651 ........ 24

28 U.S.C. § 1491(b)(1) ........ 16,21

28 U.S.C. § 1491(b)(2) ........ 15

42 U.S.C. § 1395c ........ 5

42 U.S.C. §1395k. ........ 5

42 U.S.C. § 1395w-3(a) ........ 5,6

42 U.S.C. § 1395w-3(b)(2)(A)(i)-(ii) ........ 22

42 U.S.C. § 1395w-3(b)(10) ........ 20,22

42 U.S.C. § 1395w-3(b)(10)(B) ........ 21,22

42 U.S.C. § 1395w-3(b)(10)(F) ........ 22,23

42 U.S.C. § 1395w-22 ........ 5

42 U.S.Ct. § 1395w-102 ........ 5

42 U.S.Ct. § 1395x(n) ........ 6

42 CFR §414.414.(e) ........ 7

42 CFR §424.57(c) ........ 10



**de la O ▪ Marko ▪ Magolnick ▪ Leyton**
TELEPHONE 305/285-2000 3001 S.W. 3RD AVENUE, MIAMI, FLORIDA 33129 FACSIMILE 305/285-5555

1965 Amendments to the Social Security Act,
Pub. L. No. 89-97, 79 Stat. 286 .......................................................................... 5

Medicare Prescription Drug, Improvements, and Modernization Act of 2003
Pub. L. 108-173, 117 Stat. 2066.......................................................................... 5

Webster's II New Riverside Dictionary 669 (Rev. Ed. 1996) ....................................... 23

## SUCCINCT STATEMENT OF THE QUESTIONS INVOLVED

The question presented is whether – in light of the fact that (a) CMS erroneously found Plaintiff ineligible to participate in the Round One DMEPOS Competitive Bidding Program for the South Florida CBA (for allegedly failing to submit necessary financial documents), (b) but for the error, Plaintiff was likely (and, in many categories, guaranteed) to be among the "winning bidders" for Product Categories (1) – (3), (5) – (7) and (9) – (10), and (c) the exclusion from the bidding competition (and the resulting exclusion from the Medicare program for the next 3 years) will have an immediate, irreparable and devastating effect on the providers in Plaintiff's network once the contracts extended following Round One go into effect on 07.01.08 – Plaintiff has proven a basis for the modest preliminary relief requested herein.

## CONCISE STATEMENT OF THE CASE

### I. OVERVIEW OF THE ROUND ONE COMPETITIVE BIDDING PROGRAM.

Medicare – established as part of the 1965 Amendments to the Social Security Act, Pub. L. No. 89 – 97, 79 Stat. 286 – is a program of health insurance for the elderly and disabled, and provides payment for covered medical services provided to eligible Medicare beneficiaries. 42 U.S.C. § 1395c, 1395k, 1395w-22, 1395w-102. The program consists of multiple parts including Part B, which covers certain services and products (that are generally used on an outpatient basis), including the rental and purchase of durable medical equipment, *e.g.*, oxygen for home use, wheelchairs and certain diabetic


**de la O ▪ Marko ▪ Magolnick ▪ Leyton**
TELEPHONE 305/285-2000 3001 S.W. 3RD AVENUE, MIAMI, FLORIDA 33129 FACSIMILE 305/285-5555

supplies.[1] 42 U.S.C. § 1395x(n). The United States Dep't of Health and Human Services ("HHS") is responsible for promulgating regulations needed to carry out the administration of the insurance programs established by Medicare. *Id*. at § 1395hh(a)(1).

One such regulation – implemented in response to the Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Pub. L. 108 – 173, 117 Stat. 2066 ("MMA") – establishes a competitive bidding program whereby suppliers of DME products and networks of suppliers are invited to submit bids offering to furnish items or services at a set reimbursement rate. 42 U.S.C. § 1395w-3(a). HHS, through the Centers for Medicare and Medicaid Services ("CMS") and its Competitive Bidding Implementation Contractor ("CBIC"), began phasing in the program at great speed in 2007 – 2008 with Round One, in which CMS issued a Request for Bids ("RFB") in ten competitive bidding areas ("CBA") drawn from ten of the nation's largest metropolitan statistical areas ("MSA"), including the Miami-Fort Lauderdale-Miami Beach MSA (the "South Florida CBA").[2]

Within a certain window of time, eligible bidders – including networks such as Plaintiff – had to submit (a) an electronic bid for up to 10 product categories,[3] identifying, *inter alia*, the amount of Medicare reimbursement they are willing to accept for every item in a Product Category where the bidder wishes to supply DME products

---

[1] Durable Medical Equipment, Prosthetics, Orthotics, and Supplies are referred to as "DMEPOS" or "DME" throughout this emergency motion.

[2] Round Two follows immediately on Round One's heels in 70 more MSAs in 2008 – 2009. The MMA authorizes the HHS to implement the program in "additional areas" after 2009.

[3] The product categories for the South Florida CBA are: (1) Oxygen Supplies and Equipment; (2) Standard Power Wheelchairs, Scooters, and Related Accessories, (3) Complex Rehabilitative Power Wheelchairs and Related Accessories, (4) Mail-Order Diabetic Supplies, (5) Enteral Nutrients, Equipment and Supplies, (6) Continuous Positive Airway Pressure (CPAP) Devices, Respiratory Asset Devices (RAD), and Related Supplies and Accessories, (7) Hospital Beds and Related Accessories, (8) Negative Pressure Wound Therapy (NPWT) Pumps and Related Supplies and Accessories, (9) Walkers and Related Accessories, and – for Miami and San Juan only – (10) Support Surfaces (group 2 and 3 mattress and overlays). ("Product Categories (1) – (10)," individually or "Product Categories," collectively).



**de la O ▪ Marko ▪ Magolnick ▪ Leyton**
TELEPHONE 305/285-2000 3001 S.W. 3RD AVENUE, MIAMI, FLORIDA 33129 FACSIMILE 305/285-5555

to Medicare beneficiaries, and (b) certain financial information in hardcopy form (such as financial statements and credit reports).

Winning bidders for a Product Category are selected by: (a) establishing a composite bid for each eligible bidder;[4] (b) ranking composite bids in order from lowest to highest; and (c) selecting one composite bid to be the "pivotal bid" (the lowest composite bid submitted for a Product Category that will, counting all bidders at or below that bid price, include a sufficient number of suppliers to meet beneficiary demand within the MSA for the items in that Product Category). 42 C.F.R. § 414.414(e). Winning bidders are offered standardized contracts, with reimbursement rates fixed at the median of the bid prices that are at or below the pivotal bid (the "Median Point"). *Id*.

The contracts last for three years. Losing bidders are effectively excluded from serving Medicare beneficiaries during that period, severely limiting patient choice.

## II. <u>PLAINTIFF'S BID IN THE SOUTH FLORIDA CBA'S RFB</u>.

In 2007, 19 primary DME providers in South Florida formed Plaintiff, for the purpose of participating in the South Florida MSA's bidding competition. (App. 19, 25).[5] Plaintiff carefully laid the groundwork for a successful bid. It carefully screened providers who wished to be in the network; it insisted that its primary providers be accredited long before Plaintiff anticipated submitting its bid (CMS allowed primary providers to become accredited after the bidding window closed); it held seminars to ensure that its members knew what was required in order to get accredited; it (through

[4] A composite bid is made up of (a) the predetermined weight of each item in a product category and (b) the corresponding bid amount for each item. Item (a) reflects the relative market importance of each item to the overall product category. Item (b) is the price the individual supplier is willing to provide for the item. The composite bid is calculated by multiplying (a) and (b) for each item in a Product Category and summing across for all items in the Product Category. The item weights are the same for all bidders for the same Product Category. The total of all weights in a Product Category is equal to one (1).

[5] References to Plaintiff's Appendix will be cited as "(App. ___)."


de la O ▪ Marko ▪ Magolnick ▪ Leyton
TELEPHONE 305/285-2000 3001 S.W. 3RD AVENUE, MIAMI, FLORIDA 33129 FACSIMILE 305/285-5555

counsel and a consultant) physically inspected every primary provider and subcontractor that was not accredited at the time they applied to be in Plaintiff's network, to confirm their capacity to deliver DME products and to assure Plaintiff of the financial strength of its members. (App. 19 – 20). Also, Plaintiff retained VGM Group – a national organization that provides support and guidance to Home Medical Equipment providers nationwide – to take all the bids from Plaintiff's primary providers (who did not share their bid prices with each other) and calculate Plaintiff's weighted network bid for each of the 10 Product Categories offered in Round One. (App. 19 – 20).

Significantly, Plaintiff enlisted both its counsel and VGM to review all the financial documentation that was to be furnished to CMS in hardcopy form, giving Plaintiff two layers of review to ensure that its hardcopy submission was complete. (App. 21). With this exacting preparation taking place, Chori Corp. (d/b/a Cobra Medical Equipment, Inc.; "Cobra"), a South Florida supplier in Plaintiff's network, secured Bidder No. 1000155. (App. 26).

Suppliers in Plaintiff's group then completed worksheets developed by VGM for each Product Category. (App. 21, 100 – 101). The worksheets are self-populating spreadsheets that identify each item (by HCPC code) in a Product Category, and ask each supplier to fill-in how much of that item the supplier is able to supply to the CBA and to apply a percentage discount to the current allowable Medicare price in Florida. With that information, the worksheet generated a bid amount per unit for the item and a composite bid amount for the Product Category. (App. 100 – 101). Based on this, VGM formulated a suggested Network Bid for each Product Category. (*Id.*). After careful review and calibration to ensure that the numbers and capacity assessments were


**de la O ▪ Marko ▪ Magolnick ▪ Leyton**
TELEPHONE 305/285-2000 3001 S.W. 3RD AVENUE, MIAMI, FLORIDA 33129 FACSIMILE 305/285-5555

realistic and put Plaintiff in the best possible position to win the bid,[6] a final composite bid was created. (*Id*.).

During this period, Plaintiff's providers were gathering all the financial information that had to be submitted in hardcopy form along with the electronically-submitted bid. (App. 21, 26, 126, 128, 130, 132). To assist in this process, VGM generated a checklist derived from the final rules governing the bidding process. (App. 101, 106). The documents were gathered and checked for completeness by Plaintiff's counsel, who sent them to VGM. (App. 124 – 125).

On 07.19.07, Plaintiff submitted its bid electronically. Plaintiff submitted its bid before one of the earliest-deadlines set for the Bidding Window to close (CMS repeatedly postponed the bidding deadline at the last minute, giving an unfair advantage to late-comers and bidders who dragged their feet).

Contemporaneously, VGM timely submitted, in a single package and via Federal Express Overnight Mail (Tracking No. 919138342200) all the information that CMS required in hardcopy form. (App. 101). Before sending it out, VGM confirmed that all documents on its checklist had, in fact, been provided by every supplier in Plaintiff's group. (*Id*.). The package was timely delivered to CMS. (*Id*.).

On 09.25.07, the Bidding Window closed. Plaintiff had every reason to believe that it would be among the winning bidders because it met every eligibility, financial and accreditation requirement, its suppliers were able to supply DME products throughout

[6] VGM also weighted the bids on each item based on the experience and track record of the provider, so that Plaintiff and CMS would be especially confident that Plaintiff is able to deliver the DME items at the Medicare reimbursement rates reflected in Plaintiff's bid. (App. 101). By contrast, it is now coming to light that many "winning bidders" cannot serve the needs of the CBA and/or cannot realistically live with their bid price.


**de la O ▪ Marko ▪ Magolnick ▪ Leyton**
TELEPHONE 305/285-2000 3001 S.W. 3RD AVENUE, MIAMI, FLORIDA 33129 FACSIMILE 305/285-5555

the South Florida CBA, its bids were lean and competitive, and its application was complete after independent and multi-layered review.

## III. CMS' WRONGFUL DISQUALIFICATION OF PLAINTIFF'S BID.

### A. The First Set of Reasons CMS Offered for Plaintiff's Disqualification (on 03.20.08) Are Completely, Verifiably Erroneous.

On Thursday, 03.20.08 – the day winning bidders were announced – CMS advised Plaintiff via correspondence that it had been disqualified from Round One of the South Florida CBA, on the grounds that Plaintiff purportedly failed to meet enrollment standards specified in 42 CFR § 424.57(c) and purportedly failed to submit the financial documentation called for by the RFB ("BSE-1" and "BSE-4," respectively). (App. 15 – 17).

On Friday, 03.21.08, Plaintiff contacted CMS for details, and discovered that:

- BSE-1 was based on CMS' finding that one of Plaintiff's providers – Coast-To-Coast Medical Equip., Inc. ("CTC") – was not eligible to participate in the bidding competition.
- BSE-4 was based on CMS' claim that five members of Plaintiff's network had not submitted the financial information called for by the RFB: CTC (allegedly missing 2004, 2005 and 2006 income tax statement); Cobra (allegedly missing 2005 income tax statement); Dade Medical, Inc. (allegedly missing 2005 and 2006 income tax statement and a credit score); Hometown Medical Equip. & Supplies, Inc. (allegedly missing 2007 balance sheet); and R & T Medical (allegedly missing 2004, 2005 and 2006 income tax statement).

(App. 27).


de la O ▪ Marko ▪ Magolnick ▪ Leyton
TELEPHONE 305/285-2000 3001 S.W. 3RD AVENUE, MIAMI, FLORIDA 33129 FACSIMILE 305/285-5555

Plaintiff immediately investigated, and discovered that CMS was wrong as to all grounds for disqualification. (App. 22 – 23, 27 – 28). As to BSE-1, Plaintiff had confirmed with CMS many months before, in writing, that CTC had withdrawn from Plaintiff's network. On 10.01.07, Plaintiff advised CBIC, in a letter delivered via Federal Express Overnight Mail (the "10.01.07 Letter"), that CTC "has informed the network that at they are withdrawing their request to participate in [Plaintiff's] network competitive bid," and the letter attached correspondence from CTC's counsel formally requesting withdrawal. (App. 22 – 23, 27 – 28).

That day, in an email message to CBIC entitled "PROVIDER THAT WILL WITHDRAW FROM THE NETWORK," Plaintiff attached a copy of the 10.01.07 Letter, and noted that, despite CTC's withdrawal, "[t]he bid numbers will remain the same." (App. 28, 92 – 96). On 10.04.07, CBIC emailed Plaintiff, acknowledging CTC's withdrawal, thanking Plaintiff "for notifying the CBIC of this matter regarding withdrawal from network membership and for the contact information provided." (App. 95 – 96).

As to BSE-4, CMS was simply wrong. A multi-layered internal and independent review – involving suppliers, counsel and the consultant – confirmed that Plaintiff submitted every one of the financial documents called for by the RFB, including each of the documents that CMS claimed was missing from Plaintiff's submission. (App. 26, 28, 126 – 127, 130 – 131, 134 – 135).

**B. <u>CMS' Investigation</u>.**

On Monday, 03.24.08, Plaintiff again contacted CMS, gave it the information set forth above, and asked it to rescind the disqualification and consider Plaintiff's bid. (App. 28). CMS told Plaintiff that it would review the file and respond within 30 days. (*Id*.).



**de la O ▪ Marko ▪ Magolnick ▪ Leyton**

TELEPHONE 305/285-2000 3001 S.W. 3RD AVENUE, MIAMI, FLORIDA 33129 FACSIMILE 305/285-5555

On Wednesday, 03.26.08, Plaintiff asked CMS when Plaintiff could expect a response, by what means, and what would happen if CMS concluded that Plaintiff had been wrongfully disqualified. (App. 28 – 29). That day, CMS responded:

> Our records indicate you contacted our office on March 21, 2008, regarding financial documentation. Your issue has been forwarded to the financial analyst for the Competitive Bidding Implementation Contractor (CBIC) to verify every document received with your bidder number. CBIC will notify you by e-mail within thirty business days of the results of the research. We cannot advise of contract decisions until after the evaluation has been completed.

(App. 97).

As the 30-day deadline drew near, and no decision had been issued, Plaintiff accelerated its efforts to communicate with CMS. On Wednesday, 04.16.08, Plaintiff spoke with a CMS representative about the status of the review, and Plaintiff asked to speak with a supervisor. (App. 29). On Thursday, 04.17.08, a CMS representative contacted Marquez, and reassured him that the results of the review were forthcoming. (*Id*.) Marquez again asked to speak with a supervisor. (*Id*.).

On Friday, 04.18.08, a CMS supervisor called Plaintiff. (App. 29). Plaintiff noted that Saturday, 04.19.08, was the deadline for the review to be completed, and asked if he could be advised of the ruling now (the last business day before the deadline). (*Id*.). The supervisor said that it was 30 business days, not calendar days, but reassured him that CMS would issue a ruling by Tuesday, 04.22.08. (*Id*.).

### C. The Second Set of Reasons CMS Offered for Plaintiff's Disqualification (on 04.21.08) <u>Are Almost Entirely New and Equally Erroneous</u>.

On Monday, 04.21.08, CMS sent its decision via email to Plaintiff. (App. 18). In it, CMS failed to mention (a) BSE-1 altogether, or (b) any (but one) of the supposedly-missing documents that formed the basis of BSE-4. (*Id*.) Instead, CMS now claimed


**de la O ▪ Marko ▪ Magolnick ▪ Leyton**
TELEPHONE 305/285-2000 3001 S.W. 3RD AVENUE, MIAMI, FLORIDA 33129 FACSIMILE 305/285-5555

that a *new,* different set of financial documents were not furnished to CMS, thus justifying Plaintiff's disqualification from the bidding process:

> [W]e have reexamined your bid(s), and have confirmed that 2005 income statement for Chori Corp.; 3 years income statements for Medical Respiratory Rentals, Inc.; and 3 years income statements for JAD Medical Equipment Inc. are missing. Therefore, we continue to be unable to accept these bid(s). When the program begins on July 1, 2008, Medicare will not reimburse you for furnishing these competitively bid items to Medicare beneficiaries with the competitive bidding area(s).

(App. 18, 29 – 30).

CMS is wrong as to all grounds for disqualification. There is only one financial document that CMS claimed was missing in both the first and second disqualification letters (the 2005 income tax statement for Chori Corp.). That document was provided to CMS. All the other documents were also provided. (App. 30, 128 – 129, 132 – 133).

**IV. THE DISASTEROUS IMPACT OF THE WRONGFUL <u>DISQUALIFICATION ON PLAINTIFF'S MEMBERS</u>.**

But for the erroneous disqualification, Plaintiff would have been among the winning bidders in the South Florida CBA in virtually all of the 10 Product Categories. This is confirmed in an analysis by VGM, which compares (a) Plaintiffs composite bid for each Product Category (Plaintiffs Composite Bid) to (b) a composite bid for each Product Category generated based on the actual prices that CMS will pay under the standardized contracts offered to winning bidders. (the Median Winning Composite Bid). (App. 102, 107 – 123).

To generate the Median Winning Composite Bid for each Product Category, VGM multiplied the reimbursement rate that the government will now pay for DME products in that category (the "Single Payment Amounts," which represent the Median Points described above, and which appear on the face of the contracts offered to


de la O ▪ Marko ▪ Magolnick ▪ Leyton
TELEPHONE 305/285-2000 3001 S.W. 3RD AVENUE, MIAMI, FLORIDA 33129 FACSIMILE 305/285-5555

winning bidders) by the HCPC item's weight, then added together all the weighted bids for each item. (App. 102). The resulting Median Winning Composite Bid is the median bid for all winning bidders in a Product Category. (*Id*.). So half of the winning bidders in a given Product Category had an individual composite bid *above* the Median Winning Composite Bid. (*Id*.).

Significantly, Plaintiff's Composite Bid (which appears first in the list below) is lower than or very near the Median Winning Composite Bid in virtually every Product Category:

A. Product Category (1): 67.06 vs. 85.99

B. Product Category (2): 360.887 vs. 391.251

C. Product Category (3): 565.409 vs. 666.409.

D. Product Category (4): 23.491 vs. 17.221.

E. Product Category (5): 1.164 vs. 1.033.

F. Product Category (6): 107.678 vs. 106.582.

G. Product Category (7): 820.906 vs. 875.569.

H. Product Category (8): 116.910 vs. 104.762.

I. Product Category (9): 69.209 vs. 65.693.

J. Product Category (10): 3,326.138 vs. 4,315.468.

(App. 102 -- 103).

Plaintiffs Composite Bid is lower than the Median Winning Composite Bid in Product Category (1), (2), (3), (7) and (10), which means that Plaintiffs bid would have ranked among the lowest bids submitted by *winning* bidders in those Product



**de la O ▪ Marko ▪ Magolnick ▪ Leyton**
TELEPHONE 305/285-2000 3001 S.W. 3RD AVENUE, MIAMI, FLORIDA 33129 FACSIMILE 305/285-5555

Categories.[7] (App. 103). Thus, Plaintiff would have been among the winning bidders in these Product Categories but for its disqualification. (*Id*.). Moreover, Plaintiff's Composite Bid is just above the Median Winning Composite Bid in Product Category (5), (6) and (9), making it likely that Plaintiff would have been among the "winning bidders" in those Product Categories, as well. (*Id*.).

Being excluded from the Medicare program will devastate many, if not most, of Plaintiff's providers. (*See* Argument Sect. II(B), below). Preliminary relief is urgently needed in order for Plaintiff's providers to survive long enough to see a final ruling.

## ARGUMENT

### I. STANDARDS FOR ISSUING A PRELIMINARY INJUNCTION.

The Tucker Act, 28 U.S.C. § 1491(b)(2), and RCFC 65 give this Court the authority to issue a preliminary injunction. *Global Computer Enter., Inc. v. United States*, 81 Fed. Cl. 506, 507 (Fed. Cl. 2008). To obtain one, a movant must show: (a) that the movant is likely to succeed on the merits at trial, (b) that it will suffer irreparable harm if preliminary relief is not granted, (c) that the balance of the hardships tips in the movant's favor, and (d) that a preliminary injunction will not be contrary to the public interest. *EOD Technology, Inc. v. United States*, --- Fed. Cl. ---, 2008 WL 2154108, *8 (Fed. Cl. May 15, 2008). In the balance, "[n]o one factor . . . is necessarily dispositive. . . [T]he weakness of the showing regarding one factor may be overborne by the strength of the others." *Id*. (quoting *FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993)). Under these standards, a preliminary injunction is warranted in this case.

---

[7] Any bid below the Median Winning Composite Bid is necessarily below the Pivotal Bid because the Median Winning Composite Bid is the price point which divides in half all the bids below the Pivotal Bid. Put another way, of the bids below the Pivotal Bid, half are below and half are above the Median Winning Composite – but all are below the Pivotal Bid. Thus, by definition, any bid below the Median Winning Composite Bid is a bid below the Pivotal Bid.



**de la O ▪ Marko ▪ Magolnick ▪ Leyton**
TELEPHONE 305/285-2000 3001 S.W. 3RD AVENUE, MIAMI, FLORIDA 33129 FACSIMILE 305/285-5555

## II. A PRELIMINARY INJUNCTION IS WARRANTED HERE.

### A. Plaintiff Is Likely To Succeed On The Merits At Trial.

A bid protestor must establish that it is an "interested party." 28 U.S.C. § 1491(b)(1). To do this, a protestor must (a) show it was an actual or prospective bidder and (b) have a direct economic interest in the procurement. *Information Sciences Corp. v. United States*, --- Fed. Cl. ---, 2008 WL 756165, *8 (Fed. Cl. March 18, 2008). Also, a protestor must show that the error resulted in "prejudice," which can be established by showing that the protestor had a "substantial chance" of receiving the award, but for the alleged error. *Id*., *9. A bid award may be set aside if either the procurement official's decision (a) lacked a rational basis or (b) involved a violation of regulation or procedure. *Id*., * 13; *Galen Med. Assoc. v. United States*, 369 F.3d 1324, 1329 (Fed. Cir. 2004).

Plaintiff meets these standards. It is an interested party because it submitted a bid in the South Florida CBA's Round One competitive bidding program, and it has a direct economic interest because its ability to participate in the Medicare program has a direct impact on its members' revenues and ability to remain economically viable.

Furthermore, CMS and CBIC's disqualification of Plaintiff was arbitrary, capricious and not in accordance with law. The arbitrary and capricious nature of the decision can been seen in the agency's shifting justifications for disqualification. When CMS' first set of reasons to disqualify Plaintiff were disproved, it simply dropped them – tacitly conceding that they were not well-founded – and shifted to a new set of reasons to disqualify Plaintiff. When those were also disproved, the agency refused to reconsider its ruling further. The irrationality of the agency's decision is also apparent: Plaintiff cannot be disqualified for failing to produce documents it did, in fact, produce. Disqualifying Plaintiff on this basis violates the bid eligibility rules and the government's


de la O ▪ Marko ▪ Magolnick ▪ Leyton
TELEPHONE 305/285-2000 3001 S.W. 3RD AVENUE, MIAMI, FLORIDA 33129 FACSIMILE 305/285-5555

obligation to treat bidders fairly. *Hawpe Constr., Inc. v. United States*, 46 Fed. Cl. 571, 577 (Fed. Cl. 2000) (when government solicits bids on a contract, it automatically enters into an implied-in-fact contract to treat the bidders fairly, and the government must fully and fairly consider all bids submitted in accordance with the invitation for bids).

Plaintiff is also likely to prove at trial that it would have been among the winning bidders for Product Category (1) – (3), (7), and (10), because its Composite Bid is below the Median Winning Composite Bid in these five categories.[8] Moreover, Plaintiff was very close to the Median Winning Composite Bid in Product Category (5), (6) and (9), and thus Plaintiff was very likely below the Pivotal Bid in these three categories as well.

It is difficult to determine if Plaintiff was a winning bidder in the other Product Categories because the government has not released the pivotal bids. However, each Product Category has its own bidding structure and set of winners. Even if Plaintiffs would not have won in all the Product Categories, they are entitled to relief because there is no doubt they would have won in five, and probably eight, Product Categories. Moreover, Plaintiff does not have to prove its ultimate success by mathematical certainty to justify an injunction:

> To justify [an] . . . injunction it is not necessary that the plaintiff's right to a final decision, after a trial, be absolutely certain, wholly without doubt; if the other elements are present (*i.e.*, the balance of hardships tips decidedly toward plaintiff), it will ordinarily be enough that the plaintiff has raised questions . . . so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus more deliberate investigation.

*TRW Environmental Safety Systems, Inc. v. United States*, 16 Cl.Ct. 520, 526 (1989) (quoting *Washington Metropolitan Area Transit Comm'n v. Holiday Tours, Inc*., 559 F.2d 841,

[8] *See* Note 7, *supra.*



**de la O ▪ Marko ▪ Magolnick ▪ Leyton**
TELEPHONE 305/285-2000 3001 S.W. 3RD AVENUE, MIAMI, FLORIDA 33129 FACSIMILE 305/285-5555

843 – 44 (D.C. Cir. 1977)). Substantial questions have certainly been raised here. In light of the modest nature of the relief requested, an injunction is especially appropriate.

**B. Plaintiff Will Suffer Irreparable Harm If Preliminary Relief Is Not Granted.**

Plaintiff faces irreparable harm absent preliminary relief. If excluded from the Medicare program until a final decision is reached, Plaintiff's constituent members will suffer great financial loss in the interim, and possibly face the shutdown of their businesses. (App. 23 – 24, 30, 127, 129, 133). Indeed, if the preliminary relief does not come before the Round One contracts become effective on 07.01.08, it will be too late, as the vast majority of these providers' customers will – understandably – move to sources that are able to provide the DME products they need under Medicare. (App. 24). Once those customers leave, they are likely gone for good. (*Id*.).

Moreover, an action at law would be unavailing because Plaintiff can only recover bid preparation and proposal costs in a suit for damages, and not loss of anticipated profits. *Global Computer Enter., Inc. v. United States*, 81 Fed. Cl. 506, 507 (Fed. Cl. 2008); *accord* 28 U.S.C. § 1491(b)(2) (the Court "may award any relief . . . including declaratory and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs.").

Finally, the loss of an opportunity to compete for or obtain a government contract has generally been found to constitute irreparable injury. *Ceres Environmental Services, Inc. v. United States*, 52 Fed. Cl. 23, 39 (Fed. Cl. 2002). For all of these reasons, Plaintiff faces immediate, irreparable injury without relief prior to 07.01.08.

**C. The Balance of Hardships Tips In Plaintiff's Favor.**

The balance of hardships tips strongly in Plaintiff's favor, especially given the modest nature of the preliminary relief requested. Plaintiff is not attempting to take


de la O ▪ Marko ▪ Magolnick ▪ Leyton
TELEPHONE 305/285-2000 3001 S.W. 3RD AVENUE, MIAMI, FLORIDA 33129 FACSIMILE 305/285-5555

away a contract from any other "winning bidder" or enjoin all the contracts set to go into effect on 07.01.08 so that Round One can be redone properly.[9] Instead, Plaintiff asks only that, until a final decision on the merits is reached, it be offered the same standardized contract for fixed Medicare reimbursement rates that was offered to all "winning bidders" in Product Categories (1) – (3), (5) – (7), and (9) – (10). This merely allows Plaintiff's constituent providers to remain in business long enough for a final ruling on the merits to be meaningful to them.

This Court undoubtedly has the power to issue the requested preliminary relief. Indeed, the Court has the far broader power, in appropriate cases, to remove a contract from a successful bidder and give it instead to the unsuccessful petitioning bidder. Consequently, it is indisputable that this Court has the power to do what Plaintiff requests here, where there is not a zero-sum struggle over entitlement to a single government contract. *See Choctaw Mfg. Co. v. United States*, 761 F.2d 609, 619 – 20 (11th Cir. 1985) ("A district court also has the authority to order a government contracting officer to award a contract to an unsuccessful bidder where it is clear that, but for the unlawful conduct of the contracting officer, the contract would have gone to the unsuccessful bidder"); *B.K. Instrument, Inc. v. United States*, 715 F.2d 713, 727 – 28 (2d Cir. 1983).[10]

---

[9] Plaintiff could seek a broader remedy, such as an injunction to bar the Round One contracts from becoming effective on 07.01.08 pending a final ruling on the merits. Even there, the balance of hardships would tip in Plaintiff's favor, since the case can be resolved quickly (it focuses primarily on two very narrow issues), and Plaintiff's bid could be considered quickly, causing a *de minimis* delay in the effective date for the Round One contracts. And the status quo method of Medicare reimbursement could continue briefly until a final ruling is made. But obviously, the interim remedy sought is less burdensome.

[10] Moreover, an order awarding a contract to a petitioning bid protestor is not the equivalent of an order of specific performance, which is beyond the authority of the Court to grant against the federal government. *B.K. Instrument*, 715 F.2d at 728 (specific performance is a remedy for breach of contract that enforces performance under a contract's terms; by contrast, a bid protest award arises at the contract formation stage, before there are any contract terms to enforce, and addresses only to whom the contract is given).


**de la O ▪ Marko ▪ Magolnick ▪ Leyton**
TELEPHONE 305/285-2000 3001 S.W. 3RD AVENUE, MIAMI, FLORIDA 33129 FACSIMILE 305/285-5555

### D. A Preliminary Injunction Will Not Be Contrary To The Public Interest.

Given the modest nature of the relief Plaintiff seeks, a preliminary injunction will not be contrary to the public interest. To the contrary, there is a strong public interest in Medicare beneficiaries having access to the DME products they need. This interest is advanced by having Plaintiff remain part of the Medicare program while the merits of this dispute are resolved. Moreover, it is in the public's interest for agencies to comply with statutes. *See generally FDA v. Brown & Williamson Tobacco Corp*., 529 U.S. 120, 161 (2000) ("an administrative agency's power to regulate in the public interest must always be grounded in a valid grant of authority from Congress").

## III. THIS COURT HAS JURISDICTION OVER THE BID PROTEST.

### A. 42 U.S.C. § 1395w-3(b)(10) Does Not Bar This Bid Protest.

The United States will, presumably, argue that bid protests like Plaintiff's are barred by 42 U.S.C. § 1395w-3(b)(10), which prohibits judicial review of six specific areas surrounding the DME Competitive Bidding Program:

> There shall be no administrative or judicial review under section 1395ff of this title, section 1395oo of this title, or otherwise, of –
>
> (A) the establishment of payment amounts under paragraph (5);
>
> (B) the awarding of contracts under this section;
>
> (C) the designation of competitive acquisition areas under subsection (a)(1)(A) of this section;
>
> (D) the phased-in implementation under subsection (a)(1)(B) of this section;
>
> (E) the selection of items and services for competitive acquisition under subsection (a)(2) of this section; or
>
> (F) the bidding structure and number of contractors selected under this section.


de la O ▪ Marko ▪ Magolnick ▪ Leyton
TELEPHONE 305/285-2000 3001 S.W. 3RD AVENUE, MIAMI, FLORIDA 33129 FACSIMILE 305/285-5555

Only Subsections (B) and (F) could arguably be a bar to this action. But neither is.

### 1. § 1395w-3(b)(10) Does Not Bar All Bid Protests.

At the broadest level of analysis, § 1395w-3(b)(10) – like all statutes purporting to bar judicial review – is to be narrowly construed. In *Sharp HealthCare v. Leavitt*, --- F. Supp. 2d ---, 2008 WL 927891 (S.D. Cal., April 4, 2008), the Court read §1395w-3(b)(10) narrowly to find that it had jurisdiction to consider a challenge to an HHS regulation that forced certain laboratories to participate in a competitive bidding process.

In rejecting the U.S.'s argument that § 1395w-3(b)(10)(F) barred plaintiffs' action, the Court held that the term "bidding structure" "may reasonably be interpreted as encompassing only the Secretary's establishment of the procedures or process that bidders must follow," and not necessarily determinations regarding who is required to bid. *Sharp HealthCare*, 2008 WL 927891 *3. Accordingly, the Court found

> the term ["bidding structure"] is ambiguous, at best, regarding whether it provides the Secretary with unchecked discretion to determine who must submit bids. In light of this ambiguity, the Court finds that the Secretary has not provided "clear and convincing evidence" that Congress intended to preclude judicial review of his interpretation of the face-to-face exception.

*Id*. The Court's rationale applies generally and – as argued below – specifically here.

Moreover, comparing the areas barred from judicial review by § 1395w-3(b)(10), to the scope of this Court's jurisdiction, makes clear that not all bid protests are intended to be barred. This Court can entertain actions objecting "to a proposed award or the award of a contract *or* any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1) (emphasis added). By contrast, § 1395w-3(b)(10)(B) (which is the only applicable subsection for purposes of this comparison) only bars judicial review of "the awarding of contracts." The broader

scope of this Court's jurisdiction is not an accident or mere semantics. Thus, bid protests challenging a violation of, for instance, a regulation enacted in connection with the DME competitive bidding program is not the type of claim precluded by § 1395w-3(b)(10).

**2. <u>§ 1395w-3(b)(10)(B) Does Not Bar Plaintiff's Bid Protest</u>.**

Additionally, Plaintiff's claim herein – that it was prevented from bidding at all because of an erroneous agency determination that certain of its members had not submitted the required financial document – is not barred by § 1395w-3(b)(10)(B). The statutory scheme creating the competitive bidding program draws a sharp distinction between whether a DME supplier is eligible to bid and which suppliers – among the pool of bidders whose bids are taken under consideration – are awarded contracts. Indeed, the statute forbids HHS from awarding a contract to a supplier that does not "meet[ ] the applicable quality standards" or does not "meet[ ] the applicable financial standards." 42 U.S.C. § 1395w-3(b)(2)(A)(i) – (ii).

Thus, Plaintiff's claim that it was excluded from consideration because of an erroneous agency finding that it did not supply the needed financial documentation is not a complaint about the "awarding of contracts." Rather, Plaintiff's claim is about whether it was wrongfully removed by CMS and CBIC from the pool of qualified bidders before any evaluations were made about which bidder would be awarded a contract. This type of claim is outside the ambit of § 1395w-3(b)(10)(B), and thus judicial review is not precluded.

**3. <u>§ 1395w-3(b)(10)(F) Does Not Bar Plaintiff's Bid Protest</u>.**

Finally, Plaintiff's claim is not barred by § 1395w-3(b)(10)(F). Plaintiff is not complaining about how the HHS Secretary's "establish[ed] . . . the procedures or



**de la O ▪ Marko ▪ Magolnick ▪ Leyton**

TELEPHONE 305/285-2000 3001 S.W. 3RD AVENUE, MIAMI, FLORIDA 33129 FACSIMILE 305/285-5555

process that bidders must follow." *Sharp HealthCare*, 2008 WL 927891 *3. Instead, Plaintiff's complaint takes the procedure and process at face value, and focuses on whether CMS and CBIC *violated* the procedures and process by disqualifying Plaintiff.

Stepping back from the *Sharp HealthCare* ruling, it seems clear that § 1395w-3(b)(10)(F) is attempting to bar a different – and much broader – type of challenge. The word "structure" means "1. [s]omething made up of a number of parts assembled in a particular pattern, 2. [t]he way in which parts are combined or arranged to form a whole." WEBSTER'S II NEW RIVERSIDE DICTIONARY 669 (Rev. Ed. 1996).[11] Thus, a "bidding structure" is the entire set of procedures and process established that govern the bidding program. But Plaintiff is not challenging the appropriateness of the rules assembled to govern the bidding competition. Rather, Plaintiff is challenging whether CMS and CBIC violated its rule on eligibility by erroneously disqualifying Plaintiff from the group of qualified bidders in the competition. Thus, Plaintiff's claim is outside the ambit of § 1395w-3(b)(10)(F), and thus judicial review is not precluded.

**B. <u>There is a Strong Presumption Favoring Judicial Review</u>.**

Judicial review is favored, and statutes purporting to strip it are read narrowly. *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667 (1986) (there is a "strong presumption that Congress intends judicial review of administrative action"); *United States v. Nourse*, 9 Pet. 8, 28 – 29, 34 U.S. 8, 28 – 29, 9 L. Ed. 31 (1835) (it would "excite some surprise" if a ministerial officer might, at his discretion, take action contrary to law and leave the debtor no remedy). Congress itself reaffirms this view:

> "Very rarely do statutes withhold judicial review. It has never been the policy of Congress to prevent the administration of its own statutes from being judicially confined to the scope of

[11] The third (and final) definition of "structure" – "[s]omething constructed, as a building or bridge" – refers to a *physical* structure, a different use of the word that is inapplicable here.


**de la O ▪ Marko ▪ Magolnick ▪ Leyton**
TELEPHONE 305/285-2000 3001 S.W. 3RD AVENUE, MIAMI, FLORIDA 33129 FACSIMILE 305/285-5555

> authority granted or to the objectives specified. Its policy could not be otherwise, for in such a case statutes would in effect be blank checks drawn to the credit of some administrative officer or board." S.Rep. No. 752, 79th Cong., 1st Sess., 26 (1945).

*Bowen*, 476 U.S. at 671 (quoting the Senate Committee on the Judiciary). Thus, "only upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 141 (1967) (citations omitted). Put differently, a bid protest can only be barred if it is clearly and unambiguously within the narrowly-construed list of items barred by a jurisdiction-stripping statute. That high bar cannot be hurdled here to block Plaintiff's claim.[12]

**REQUEST FOR EXPEDITED HEARING**

Plaintiff requests that this Court schedule a hearing on an expedited basis. If a ruling on the preliminary relief requested herein does not take place before 07.01.08 – the day the Round One contracts go into effect – Plaintiff's businesses will quickly suffer irreparable injury that cannot be undone even if an injunction is issued shortly thereafter (as Plaintiff's customer base will, almost immediately after the Round One contracts go into effect, migrate away from Plaintiff's providers and toward "winning bidders," and most (if not virtually all) of those customers will, in all likelihood, not come back). For these reasons, Plaintiff respectfully requests that this motion be considered before 07.01.08.

---

[12] Indeed, the Court does not need to determine jurisdictional issues before granting a preliminary injunction. *Belbacha v. Bush*, 520 F.3d 452 (D.C. Cir. 2008) ("if a case presents a 'substantial' jurisdictional question, then under the All Writs Act, a district court may act to preserve its jurisdiction while it determines whether it has jurisdiction") (citing *US v. United Mine Workers*, 330 U.S. 258, 293, 67 S. Ct. 677, 91 L. Ed. 884 (1947) and *Bell v. Hood*, 327 U.S. 678, 66 S. Ct. 773, 90 L. Ed. 939 (1946)). The Court of Federal Claims – like Article III federal district courts – can act under the All Writs Act ("AWA"). *McNeil v. US*, 2007 WL 1095679 (Fed. Cl., Feb. 23, 2007) (noting that the AWA, 28 U.S.C. § 1651, applies to "[t]he Supreme Court and all courts established by Act of Congress," including the Art. I COFC.


**de la O ▪ Marko ▪ Magolnick ▪ Leyton**
TELEPHONE 305/285-2000 3001 S.W. 3RD AVENUE, MIAMI, FLORIDA 33129 FACSIMILE 305/285-5555

## CONCLUSION

Plaintiff requests that the Court – on an expedited basis and before the Round One contracts become effective on 07.01.08 – enter an Order requiring that the United States offer Plaintiff the same standardized contract it offered to "winning bidders" in Product Categories (1) – (3), (5) – (7), and (9) – (10) in the Round One DMEPOS Competitive Bidding Program for the South Florida CBA. This preliminary relief would last until a final decision on the merits is reached herein.

Respectfully submitted,

**DE LA O, MARKO,**
**MAGOLNICK & LEYTON**
Attorneys for Plaintiff
3001 S.W. 3rd Avenue
Miami, Florida 33129
Telephone: 305.285.2000
Facsimile: 305.285.5555

By: /s/ David Everett Marko
**David Everett Marko**
Florida Bar No. 0939633
marko@dmmllaw.com
**Daniel L. Leyton**
Florida Bar No. 0061824
leyton@dmmllaw.com

**KRAVITZ & TALAMO**
Attorneys for Plaintiff
7600 W 20th Avenue
Suite 213
Hialeah, Florida 33016
Telephone: 305.558.5300
Facsimile: 305.557.1934

By: /s/ Javier Talamo
**Javier Talamo**
Florida Bar No. 0721808
javier_talamo@yahoo.com

**CERTIFICATE OF SERVICE**

I hereby certify that on June 18, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document was served this day on all counsel of record and pro se parties identified on the attached Service List either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized matter for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

David D'Alessandris, Trial Attorney
Commercial Litigation Branch
Civil Division
United States Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530
David D'Alessandris@usdoj.gov

/s/ David Everett Marko


**de la O ▪ Marko ▪ Magolnick ▪ Leyton**
TELEPHONE 305/285-2000 3001 S.W. 3RD AVENUE, MIAMI, FLORIDA 33129 FACSIMILE 305/285-5555