**Effective: December 8, 2003**

United States Code Annotated Currentness
Title 42. The Public Health and Welfare
Chapter 7. Social Security (Refs & Annos)
Subchapter XVIII. Health Insurance for Aged and Disabled (Refs & Annos)
Part B. Supplementary Medical Insurance Benefits for Aged and Disabled (Refs & Annos)
➡ **§ 1395w-3. Competitive acquisition of certain items and services**

(a) Establishment of competitive acquisition programs

(1) Implementation of programs

(A) In general

The Secretary shall establish and implement programs under which competitive acquisition areas are established throughout the United States for contract award purposes for the furnishing under this part of competitively priced items and services (described in paragraph (2)) for which payment is made under this part. Such areas may differ for different items and services.

(B) Phased-in implementation

The programs--

**(i)** shall be phased in among competitive acquisition areas in a manner so that the competition under the programs occurs in--

**(I)** 10 of the largest metropolitan statistical areas in 2007;

**(II)** 80 of the largest metropolitan statistical areas in 2009; and

**(III)** additional areas after 2009; and

**(ii)** may be phased in first among the highest cost and highest volume items and services or those items and services that the Secretary determines have the largest savings potential.

(C) Waiver of certain provisions

In carrying out the programs, the Secretary may waive such provisions of the Federal Acquisition Regulation as are necessary for the efficient implementation of this section, other than provisions relating to confidentiality of information and such other provisions as the Secretary determines appropriate.

(2) Items and services described



© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

The items and services referred to in paragraph (1) are the following:

(A) Durable medical equipment and medical supplies

Covered items (as defined in section 1395m(a)(13)) of this title for which payment would otherwise be made under section 1395m(a) of this title, including items used in infusion and drugs (other than inhalation drugs) and supplies used in conjunction with durable medical equipment, but excluding class III devices under the Federal Food, Drug, and Cosmetic Act.

(B) Other equipment and supplies

Items and services described in section 1395u(s)(2)(D) of this title, other than parenteral nutrients, equipment, and supplies.

(C) Off-the-shelf orthotics

Orthotics described in section 1395x(s)(9) of this title for which payment would otherwise be made under section 1395m(h) of this title which require minimal self-adjustment for appropriate use and do not require expertise in trimming, bending, molding, assembling, or customizing to fit to the individual.

(3) Exception authority

In carrying out the programs under this section, the Secretary may exempt--

**(A)** rural areas and areas with low population density within urban areas that are not competitive, unless there is a significant national market through mail order for a particular item or service; and

**(B)** items and services for which the application of competitive acquisition is not likely to result in significant savings.

(4) Special rule for certain rented items of durable medical equipment and oxygen

In the case of a covered item for which payment is made on a rental basis under section 1395m(a) of this title and in the case of payment for oxygen under section 1395m(a)(5) of this title, the Secretary shall establish a process by which rental agreements for the covered items and supply arrangements with oxygen suppliers entered into before the application of the competitive acquisition program under this section for the item may be continued notwithstanding this section. In the case of any such continuation, the supplier involved shall provide for appropriate servicing and replacement, as required under section 1395m(a) of this title.

(5) Physician authorization

(A) In general

With respect to items or services included within a particular HCPCS code, the Secretary may establish a process for certain items and services under which a physician may prescribe a particular brand or mode of delivery of an item or service within such code if the physician determines that use of the particular item or service would avoid an adverse medical outcome on the individual, as determined by the Secretary.

(B) No effect on payment amount



© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

A prescription under subparagraph (A) shall not affect the amount of payment otherwise applicable for the item or service under the code involved.

(6) Application

For each competitive acquisition area in which the program is implemented under this subsection with respect to items and services, the payment basis determined under the competition conducted under subsection (b) of this section shall be substituted for the payment basis otherwise applied under section 1395m(a) of this title, section 1395m(h) of this title, or section 1395u(s) of this title, as appropriate.

(b) Program requirements

(1) In general

The Secretary shall conduct a competition among entities supplying items and services described in subsection (a)(2) of this section for each competitive acquisition area in which the program is implemented under subsection (a) of this section with respect to such items and services.

(2) Conditions for awarding contract

(A) In general

The Secretary may not award a contract to any entity under the competition conducted in an [FN1] competitive acquisition area pursuant to paragraph (1) to furnish such items or services unless the Secretary finds all of the following:

**(i)** The entity meets applicable quality standards specified by the Secretary under section 1395m(a)(20) of this title.

**(ii)** The entity meets applicable financial standards specified by the Secretary, taking into account the needs of small providers.

**(iii)** The total amounts to be paid to contractors in a competitive acquisition area are expected to be less than the total amounts that would otherwise be paid.

**(iv)** Access of individuals to a choice of multiple suppliers in the area is maintained.

(B) Timely implementation of program

Any delay in the implementation of quality standards under section 1395m(a)(20) of this title or delay in the receipt of advice from the program oversight committee established under subsection (c) of this section shall not delay the implementation of the competitive acquisition program under this section.

(3) Contents of contract

(A) In general

A contract entered into with an entity under the competition conducted pursuant to paragraph (1) is subject to terms and conditions that the Secretary may specify.



© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(B) Term of contracts

The Secretary shall recompete contracts under this section not less often than once every 3 years.

(4) Limit on number of contractors

(A) In general

The Secretary may limit the number of contractors in a competitive acquisition area to the number needed to meet projected demand for items and services covered under the contracts. In awarding contracts, the Secretary shall take into account the ability of bidding entities to furnish items or services in sufficient quantities to meet the anticipated needs of individuals for such items or services in the geographic area covered under the contract on a timely basis.

(B) Multiple winners

The Secretary shall award contracts to multiple entities submitting bids in each area for an item or service.

(5) Payment

(A) In general

Payment under this part for competitively priced items and services described in subsection (a)(2) of this section shall be based on bids submitted and accepted under this section for such items and services. Based on such bids the Secretary shall determine a single payment amount for each item or service in each competitive acquisition area.

(B) Reduced beneficiary cost-sharing

(i) Application of coinsurance

Payment under this section for items and services shall be in an amount equal to 80 percent of the payment basis described in subparagraph (A).

(ii) Application of deductible

Before applying clause (i), the individual shall be required to meet the deductible described in section 1395*l*(b) of this title.

(C) Payment on assignment-related basis

Payment for any item or service furnished by the entity may only be made under this section on an assignment-related basis.

(D) Construction

Nothing in this section shall be construed as precluding the use of an advanced beneficiary notice with respect to a competitively priced item and service.

(6) Participating contractors



© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(A) In general

Except as provided in subsection (a)(4) of this section, payment shall not be made for items and services described in subsection (a)(2) of this section furnished by a contractor and for which competition is conducted under this section unless--

**(i)** the contractor has submitted a bid for such items and services under this section; and

**(ii)** the Secretary has awarded a contract to the contractor for such items and services under this section.

(B) Bid defined

In this section, the term "bid" means an offer to furnish an item or service for a particular price and time period that includes, where appropriate, any services that are attendant to the furnishing of the item or service.

(C) Rules for mergers and acquisitions

In applying subparagraph (A) to a contractor, the contractor shall include a successor entity in the case of a merger or acquisition, if the successor entity assumes such contract along with any liabilities that may have occurred thereunder.

(D) Protection of small suppliers

In developing procedures relating to bids and the awarding of contracts under this section, the Secretary shall take appropriate steps to ensure that small suppliers of items and services have an opportunity to be considered for participation in the program under this section.

(7) Consideration in determining categories for bids

The Secretary may consider the clinical efficiency and value of specific items within codes, including whether some items have a greater therapeutic advantage to individuals.

(8) Authority to contract for education, monitoring, outreach, and complaint services

The Secretary may enter into contracts with appropriate entities to address complaints from individuals who receive items and services from an entity with a contract under this section and to conduct appropriate education of and outreach to such individuals and monitoring quality of services with respect to the program.

(9) Authority to contract for implementation

The Secretary may contract with appropriate entities to implement the competitive bidding program under this section.

(10) No administrative or judicial review

There shall be no administrative or judicial review under section 1395ff of this title, section 1395oo of this title, or otherwise, of--



© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**(A)** the establishment of payment amounts under paragraph (5);

**(B)** the awarding of contracts under this section;

**(C)** the designation of competitive acquisition areas under subsection (a)(1)(A) of this section;

**(D)** the phased-in implementation under subsection (a)(1)(B) of this section;

**(E)** the selection of items and services for competitive acquisition under subsection (a)(2) of this section; or

**(F)** the bidding structure and number of contractors selected under this section.

(c) Program advisory and oversight committee

(1) Establishment

The Secretary shall establish a Program Advisory and Oversight Committee (hereinafter in this section referred to as the "Committee").

(2) Membership; terms

The Committee shall consist of such members as the Secretary may appoint who shall serve for such term as the Secretary may specify.

(3) Duties

(A) Advice

The Committee shall provide advice to the Secretary with respect to the following functions:

**(i)** The implementation of the program under this section.

**(ii)** The establishment of financial standards for purposes of subsection (b)(2)(A)(ii) of this section.

**(iii)** The establishment of requirements for collection of data for the efficient management of the program.

**(iv)** The development of proposals for efficient interaction among manufacturers, providers of services, suppliers (as defined in section 1395x(d) of this title, and individuals.

**(v)** The establishment of quality standards under section 1395m(a)(20) of this title.

(B) Additional duties

The Committee shall perform such additional functions to assist the Secretary in carrying out this section as the Secretary may specify.

(4) Inapplicability of FACA

The provisions of the Federal Advisory Committee Act (5 U.S.C. App.) shall not apply.

(5) Termination



© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

The Committee shall terminate on December 31, 2009.

(d) Report

Not later than July 1, 2009, the Secretary shall submit to Congress a report on the programs under this section. The report shall include information on savings, reductions in cost-sharing, access to and quality of items and services, and satisfaction of individuals.

(e) Demonstration project for clinical laboratory services

(1) In general

The Secretary shall conduct a demonstration project on the application of competitive acquisition under this section to clinical diagnostic laboratory tests--

**(A)** for which payment would otherwise be made under section 1395*l*(h) of this title (other than for pap smear laboratory tests under paragraph (7) of such section) or section 1395m(d)(1) of this title (relating to colorectal cancer screening tests); and

**(B)** which are furnished by entities that did not have a face-to-face encounter with the individual.

(2) Terms and conditions

(A) In general

Except as provided in subparagraph (B), such project shall be under the same conditions as are applicable to items and services described in subsection (a)(2) of this section, excluding subsection (b)(5)(B) of this section and other conditions as the Secretary determines to be appropriate.

(B) Application of CLIA quality standards

The quality standards established by the Secretary under section 263a of this title for clinical diagnostic laboratory tests shall apply to such tests under the demonstration project under this section in lieu of quality standards described in subsection (b)(2)(A)(i) of this section.

(3) Report

The Secretary shall submit to Congress--

**(A)** an initial report on the project not later than December 31, 2005; and

**(B)** such progress and final reports on the project after such date as the Secretary determines appropriate.

CREDIT(S)

(Aug. 14, 1935, c. 531, Title XVIII, § 1847, as added Aug. 5, 1997, Pub.L. 105-33, Title IV, § 4319(a), 111 Stat. 392; Pub.L. 106-113, Div. B, § 1000(a)(6) [Title III, § 321(c)], Nov. 29, 1999, 113 Stat. 1536, 1501A-366; Dec. 8, 2003, Pub.L. 108-173, Title III, § 302(b)(1), 117 Stat. 2224.)

[FN1] So in original. The word “an” should probably read “a”.



© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

HISTORICAL AND STATUTORY NOTES

Revision Notes and Legislative Reports

1997 Acts. House Report No. 105-149, House Conference Report No. 105-217, and Statement by President, see 1997 U.S. Code Cong. and Adm. News, p. 176.

1999 Acts. Statement by President, see 1999 U.S. Code Cong. and Adm. News, p. 290.

2003 Acts. House Conference Report No. 108-391 and Statement by President, see 2003 U.S. Code Cong. and Adm. News, p. 1808.

References in Text

The Federal Food, Drug, and Cosmetic Act, referred to in subsec. (a)(2)(A), is Act June 25, 1938, c. 675, 52 Stat. 1040, as amended, which is classified principally to chapter 9 of Title 21, 21 U.S.C.A. § 301 et seq., is also known as the Copeland Pure Food and Drugs Act, the Food, Drug, and Cosmetic Act, and the Humphrey-Durham Act.

The Federal Advisory Committee Act, referred to in subsec. (c)(4), is Pub.L. 92-463, Oct. 6, 1972, 86 Stat. 770, which is classified principally to 5 U.S.C.A. App. 2§ 1 et seq.

Amendments

2003 Amendments. Pub.L. 108-173, § 302(b)(1), rewrote the section, which formerly read:

"§ 1395w-3. Demonstration projects for competitive acquisition of items and services

"(a) Establishment of demonstration project bidding areas

"(1) In general

"The Secretary shall implement not more than 5 demonstration projects under which competitive acquisition areas are established for contract award purposes for the furnishing under this part of the items and services described in subsection (d) of this section.

"(2) Project requirements

"Each demonstration project under paragraph (1)--

"**(A)** shall include such group of items and services as the Secretary may prescribe,

"**(B)** shall be conducted in not more than 3 competitive acquisition areas, and

"**(C)** shall be operated over a 3-year period.

"(3) Criteria for establishment of competitive acquisition areas

"Each competitive acquisition area established under a demonstration project implemented under paragraph (1)--

"**(A)** shall be, or shall be within, a metropolitan statistical area (as defined by the Secretary of Commerce), and

"**(B)** shall be chosen based on the availability and accessibility of entities able to furnish items and services,



© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

and the probable savings to be realized by the use of competitive bidding in the furnishing of items and services in such area.

"(b) Awarding of contracts in areas

"(1) In general

"The Secretary shall conduct a competition among individuals and entities supplying items and services described in subsection (c) of this section for each competitive acquisition area established under a demonstration project implemented under subsection (a) of this section.

"(2) Conditions for awarding contract

"The Secretary may not award a contract to any entity under the competition conducted pursuant to paragraph (1) to furnish an item or service unless the Secretary finds that the entity meets quality standards specified by the Secretary and that the total amounts to be paid under the contract are expected to be less than the total amounts that would otherwise be paid.

"(3) Contents of contract

"A contract entered into with an entity under the competition conducted pursuant to paragraph (1) is subject to terms and conditions that the Secretary may specify.

"(4) Limit on number of contractors

"The Secretary may limit the number of contractors in a competitive acquisition area to the number needed to meet projected demand for items and services covered under the contracts.

"(c) Expansion of projects

"(1) Evaluations

"The Secretary shall evaluate the impact of the implementation of the demonstration projects on medicare program payments, access, diversity of product selection, and quality. The Secretary shall make annual reports to the Committees on Ways and Means and Commerce of the House of Representatives and the Committee on Finance of the Senate on the results of the evaluation described in the preceding sentence and a final report not later than 6 months after the termination date specified in subsection (e) of this section.

"(2) Expansion

"If the Secretary determines from the evaluations under paragraph (1) that there is clear evidence that any demonstration project--

"**(A)** results in a decrease in Federal expenditures under this subchapter, and

"**(B)** does not reduce program access, diversity of product selection, and quality under this subchapter,

"the Secretary may expand the project to additional competitive acquisition areas.

"(d) Services described

"The items and services to which this section applies are all items and services covered under this part (except for physicians' services as defined in section 1395x(s)(1) of this title) that the Secretary may specify. At least one demonstration project shall include oxygen and oxygen equipment.

"(e) Termination

"Notwithstanding any other provision of this section, all projects under this section shall terminate not later than December 31, 2002."



© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1999 Amendments. Subsec. (b)(2). Pub.L. 106-113 [§ 321(c)], inserted “and” after “specified by the Secretary”.

Effective and Applicability Provisions

1999 Acts. Amendments by Pub.L. 106-113 [§ 321] effective as if included in the enactment of the Balanced Budget Act of 1997, Pub.L. 105-33, Aug. 5, 1997, 111 Stat. 251, see Pub.L. 106-113, Div. B, § 1000(a)(6) [Title III, § 321(m)], Nov. 29, 1999, 113 Stat. 1536, 1501A-368, set out as a note under section 1395d of this title.

Prior Provisions

A prior section 1395w-3, Act Aug. 14, 1935, c. 531, Title XVIII, § 1847, as added July 1, 1988, Pub.L. 100-360, Title II, § 202(j), 102 Stat. 719, and amended Oct. 13, 1988, Pub.L. 100-485, Title VI, § 608(d)(5)(I), 102 Stat. 2414, which provided for the appointment of a Prescription Drug Payment Review Commission by the Director of the Congressional Office of Technology Assessment, was repealed by Pub.L. 101-234, Title II, § 201(a), Dec. 13, 1989, 103 Stat. 1981.

GAO Report on Impact of Competitive Acquisition on Suppliers

Pub.L. 108-173, Title III, § 302(b)(3), Dec. 8, 2003, 117 Stat. 2230, provided that:

**“(A) Study.**--The Comptroller General of the United States shall conduct a study on the impact of competitive acquisition of durable medical equipment under section 1847 of the Social Security Act [this section], as amended by paragraph (1), on suppliers and manufacturers of such equipment and on patients. Such study shall specifically examine the impact of such competitive acquisition on access to, and quality of, such equipment and service related to such equipment.

**“(B) Report.**--Not later than January 1, 2009, the Comptroller General shall submit to Congress a report on the study conducted under subparagraph (A) and shall include in the report such recommendations as the Comptroller General determines appropriate.

Report on Activities of Suppliers

Pub.L. 108-173, Title III, § 302(e), Dec. 8, 2003, 117 Stat. 2233, provided that: “The Inspector General of the Department of Health and Human Services shall conduct a study to determine the extent to which (if any) suppliers of covered items of durable medical equipment that are subject to the competitive acquisition program under section 1847 of the Social Security Act [this section], as amended by subsection (a) [so in original; probably should read ‘subsection (b)’, meaning the Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Pub.L. 108-173, Title III, § 302(b), Dec. 8, 2003, 117 Stat. 2224, which amended this section], are soliciting physicians to prescribe certain brands or modes of delivery of covered items based on profitability. Not later than July 1, 2009, the Inspector General shall submit to Congress a report on such study.”

Study by GAO

Section 4319(c) of Pub.L. 105-33 provided that: “The Comptroller of the United States shall study the effective-



© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

ness of the establishment of competitive acquisition areas under section 1847(a) of the Social Security Act [subsec. (a) of this section], as added by this section."

LIBRARY REFERENCES

American Digest System

Health 🔑 520, 535(4).
United States 🔑 60.
Key Number System Topic Nos. 198H, 393.

**42** U.S.C.A. § **1395w-3**, **42** USCA § **1395w-3**
Current through P.L. 110-243 (excluding P.L. 110-234) approved 6-3-08

Copr. (C) 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works

END OF DOCUMENT



© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Effective: June 11, 2007**

Code of Federal Regulations Currentness
Title 42. Public Health
Chapter IV. Centers for Medicare & Medicaid Services, Department of Health and Human Services (Refs & Annos)
Subchapter B. Medicare Program
Part 414. Payment for Part B Medical and Other Health Services (Refs & Annos)
Subpart F. Competitive Bidding for Certain Durable Medical Equipment, Prosthetics, Orthotics, and Supplies (Dmepos) (Refs & Annos)

**§ 414.414 Conditions for awarding contracts.**

(a) General rule. The rules set forth in this section govern the evaluation and selection of suppliers for contract award purposes under a competitive bidding program.

(b) Basic supplier eligibility.

(1) Each supplier must meet the enrollment standards specified in § 424.57(c) of this chapter.

(2) Each supplier must disclose information about any prior or current legal actions, sanctions, revocations from the Medicare program, program-related convictions as defined in section 1128(a)(1) through (a)(4) of the Act, exclusions or debarments imposed against it, or against any members of the board of directors, chief corporate officers, high-level employees, affiliated companies, or subcontractors, by any Federal, State, or local agency. The supplier must certify in its bid that this information is completed and accurate.

(3) Each supplier must have all State and local licenses required to perform the services identified in the request for bids.

(4) Each supplier must submit a bona fide bid that complies with all the terms and conditions contained in the request for bids.

(5) Each network must meet the requirements specified in § 414.418.

(c) Quality standards and accreditation. Each supplier must meet applicable quality standards developed by CMS in accordance with section 1834(a)(20) of the Act and be accredited by a CMS-approved accreditation organization that meets the requirements of § 424.58 of this subchapter, unless a grace period is specified by CMS.

(d) Financial standards. Each supplier must submit along with its bid the applicable financial documentation specified in the request for bids.

(e) Evaluation of bids. CMS evaluates bids submitted for items within a product category by--

(1) Calculating the expected beneficiary demand in the CBA for the items in the product category;

(2) Calculating the total supplier capacity that would be sufficient to meet the expected beneficiary demand in the CBA for the items in the product category;

(3) Establishing a composite bid for each supplier and network that submitted a bid for the product category.

(4) Arraying the composite bids from the lowest composite bid price to the highest composite bid price;

(5) Calculating the pivotal bid for the product category;

(6) Selecting all suppliers and networks whose composite bids are less than or equal to the pivotal bid for that product category, and that meet the requirements in paragraphs (b) through (d) of this section.

(f) Expected savings. A contract is not awarded under



© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

this subpart unless CMS determines that the amounts to be paid to contract suppliers for an item under a competitive bidding program are expected to be less than the amounts that would otherwise be paid for the same item under Subpart C or Subpart D.

(g) Special rules for small suppliers.

(1) Target for small supplier participation. CMS ensures that small suppliers have the opportunity to participate in a competitive bidding program by taking the following steps:

(i) Setting a target number for small supplier participation by multiplying 30 percent by the number of suppliers that meet the requirements in paragraphs (b) through (d) of this section and whose composite bids are equal to or lower than the pivotal bid calculated for the product category;

(ii) Identifying the number of qualified small suppliers whose composite bids are at or below the pivotal bid for the product category;

(iii) Selecting additional small suppliers whose composite bids are above the pivotal bid for the product category in ascending order based on the proximity of each small supplier's composite bid to the pivotal bid, until the number calculated in paragraph (g)(1)(i) of this section is reached or there are no more composite bids submitted by small suppliers for the product category.

(2) The bids by small suppliers that are selected under paragraph (g)(1)(iii) of this section are not used to calculate the single payment amounts for any items under § 414.416 of this subpart.

(h) Sufficient number of suppliers.

(1) Except as provided in paragraph (h)(3) of this section. CMS will award at least five contracts, if there are five suppliers satisfying the requirements in paragraphs (b) through (f) of this section; or

(2) CMS will award at least two contracts, if there are less than five suppliers meeting these requirements and the suppliers satisfying these requirements have sufficient capacity to satisfy beneficiary demand for the product category calculated under paragraph (e)(1) of this section.

(3) The provisions of paragraph (h)(1) of this section do not apply to regional or nationwide mail order CBAs under § 414.410(d)(2) of this subpart.

(i) Selection of new suppliers after bidding.

(1) Subsequent to the awarding of contracts under this subpart, CMS may award additional contracts if it determines that additional contract suppliers are needed to meet beneficiary demand for items under a competitive bidding program. CMS selects additional contract suppliers by--

(i) Referring to the arrayed list of suppliers that submitted bids for the product category included in the competitive bidding program for which beneficiary demand is not being met; and

(ii) Beginning with the supplier whose composite bid is the first composite bid above the pivotal bid for that product category, determining if that supplier is willing to become a contract supplier under the same terms and conditions that apply to other contract suppliers in the CBA.

(2) Before CMS awards additional contracts under paragraph (i)(1) of this section, a supplier must submit updated information demonstrating that the supplier meets the requirements under paragraphs (b) through (d) of this section.

[72 FR 18085, 18088, April 10, 2007]

SOURCE: 55 FR 23441, June 8, 1990; 56 FR 50823, Oct. 9, 1991; 57 FR 42493, Sept. 15, 1992; 57 FR 57688, Dec. 7, 1992; 60 FR 35497, July 10, 1995; 60 FR 50441, Sept. 29, 1995, unless otherwise noted.

AUTHORITY: Secs. 1102, 1871, and 1881(b)(l) of the Social Security Act (42 U.S.C. 1302, 1395hh, and 1395rr(b)(l)).

42 C. F. R. § 414.414, **42 CFR** § **414.414**

Current through June 5, 2008; 73 FR



© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

42 C.F.R. § 414.414

32229

Copr. © 2008 Thomson Reuters/West

END OF DOCUMENT



© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Palmetto GBA
PARTNERS IN EXCELLENCE

CMS
CENTERS for MEDICARE & MEDICAID SERVICES

March 20, 2008

Jack Marquez
ALL FLORIDA NETWORK CORP.
2351 Nw 93Rd Ave
Miami, FL 33172

RE: ALL FLORIDA NETWORK CORP.
Bidder Number: 1000155

Dear Jack Marquez,

Thank you for bidding in the first phase of the Medicare Durable Medical Equipment, Prosthetics, Orthotics, and Supplies (DMEPOS) Competitive Bidding Program. Unfortunately, we are unable to accept your bid(s) as indicated in the enclosed chart. Please note that if your bid(s) was successful for any competitive bidding area/product category not shown on the enclosure, you will be notified in a separate letter.

When the program begins on July 1, 2008, Medicare will not reimburse you for furnishing these competitively bid items to Medicare beneficiaries within the competitive bidding area(s). You will be responsible for informing beneficiaries who seek to purchase these items from you that you are not a contract supplier for these items within the competitive bidding area(s). However, you may still receive payment for maintenance and serving of beneficiary owned items in accordance with 42 CFR 414.408(k). In addition, this decision does not prevent you from becoming a grandfathered supplier for certain rental items and oxygen and oxygen equipment, per 42 CFR 414.408(j).

This decision does not prevent you from participating in any future competitions under the Medicare DMEPOS Competitive Bidding Program.

If you have any questions, please contact the customer service center at 877-577-5331.

Sincerely,

Jean Catalano

Jean Catalano
Program Manager
Competitive Bidding Implementation Contractor

Enclosures

## REASON CODES FOR BID DISQUALIFICATION

BSE-1: Bidder did not meet enrollment standards specified in 42 CFR 424.57(c).
BSE-2: Bidder did not submit a bona fide bid that complies with all the terms and conditions contained in the request for bids (RFB).
BSE-3: Bidder did not meet applicable quality standards developed by CMS in accordance with section 1834(a)(20) of the Social Security Act/was not accredited by a CMS-approved accreditation organization.
BSE-4: Bidder did not submit along with its bid the applicable financial documentation specified in the request for bids (RFB).
NR-1: Bidder did not meet network requirements.
CO-1: Bidder did not submit a single bid for commonly-owned or controlled suppliers.
FS-1: Bidder did not meet financial standards.

**Bidder Number: 1000155**

| Product Categories / CBAs | Oxygen Equipment and Supplies | Standard Power Wheelchairs, Scooters and Related Accessories | Complex Rehabilitative Power Wheelchairs and Related Accessories | Mail Order Diabetic Supplies | Enteral Nutrients, Equipment and Supplies | CPAP, RAD and Related Supplies and Accessories | Hospital Beds and Related Accessories | NPWT Pumps and Related Supplies and Accessories | Walkers and Related Accessories | Support Surfaces |
|---|---|---|---|---|---|---|---|---|---|---|
| Miami-Fort Lauderdale Miami Beach,FL | BSE1 BSE4 | BSE1 BSE4 | BSE1 BSE4 | BSE1 BSE4 | BSE1 BSE4 | BSE1 BSE4 | BSE1 BSE4 | BSE1 BSE4 | BSE1 BSE4 | BSE1 BSE4 |



**Please see document entitled "Reason Codes for Bid Disqualification" for the disqualification reason associated with each code listed on this chart.**

at&t

[Print] [Close]

From: CBIC.CONTRACTS@palmettogba.com
To: jack0708@bellsouth.net
Subject: Competitive Bidding
Date: Mon, 21 Apr 2008 22:54:30 +0000

We are writing in response to the concerns you raised regarding your bid(s) submitted for the first round of the Medicare Durable Medical Equipment, Prosthetics, Orthotics, and Supplies (DMEPOS) Competitive Bidding Program. As requested, we have reexamined your bid(s), and have confirmed that 2005 income statement for Chori Corp; 3 years income statements for Medical Respiratory Rentals, Inc; and 3 years income statements for JAD Medical Equipment Inc. are missing. Therefore, we continue to be unable to accept these bid(s).

When the program begins on July 1, 2008, Medicare will not reimburse you for furnishing these competitively bid items to Medicare beneficiaries within the competitive bidding area(s). You will be responsible for informing beneficiaries who seek to purchase these items from you that you are not a contract supplier for these items within the competitive bidding area(s). However, you may still receive payment for maintenance and servicing of beneficiary owned items in accordance with 42 CFR 414.408(k). In addition, this decision does not prevent you from becoming a grandfathered supplier for certain rental items and oxygen and oxygen equipment, as set forth in 42 CFR 414.408(j).

This decision does not prevent you from participating in any future competitions under the Medicare DMEPOS Competitive Bidding Program.

Sincerely,
Competitive Bidding Implementation Contractor
Palmetto GBA

This e-mail is confidential and subject to privilege:
<http://www.PalmettoGBA.com/disclaimer>

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

| | | |
|---|---|---|
| ALL FLORIDA NETWORK CORP., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 08 – 441 C |
| | ) | |
| vs. | ) | |
| | ) | (Judge Lawrence M. Baskir) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| ________________________________ | ) | |

**AFFIDAVIT OF RODOLFO HERNANDEZ, JR.**

| | |
|---|---|
| STATE OF FLORIDA | ) |
| | ) |
| CITY OF MIAMI | ) |

I, RODOLFO HERNANDEZ, JR, being duly sworn, deposes and says as follows:

## I. BACKGROUND.

1. I am the President of All Florida Network Corp. (the Plaintiff herein).

2. Plaintiff is a network of South Florida DME providers – formed pursuant to the rules set forth for the Medicare competitive bidding program – to submit a bid in Round One of the Medicare competitive bidding process in the Miami-Fort Lauderdale-Miami Beach area (the "South Florida CBA"). Bidders could submit bids in up to 10 Product Categories. Winning bidders are offered exclusive three-year contracts under which they would receive Medicare reimbursements at a pre-set figure[1] for DME items furnished in the South Florida CBA.

3. We prepared carefully in forming the group and preparing for the bid:

[1] The figure is the median bid price of all "winning bidders" for every item within a Product Category.



de la O ▪ Marko ▪ Magolnick ▪ Leyton
TELEPHONE 305/285-2000 3001 S.W. 3RD AVENUE, MIAMI, FLORIDA 33129 FACSIMILE 305/285-5555

A. We carefully screened who would be allowed into the group, picking primary providers who were already accredited or that were in a position to become accredited long before they had to be to participate in Round One (the CMS deadline for providers to be accredited was October 31, 2007, which is after the bidding window closed; we required our providers to be accredited long before we submitted our bid, so we were confident of our group's composition and capacity). Indeed, we turned away many applicant providers.

B. To ensure that all primary providers and subcontractors be appropriately accredited by the time we submitted our bids, our counsel and/or our consultant physically inspected each and every unaccredited primary provider and subcontractor in our group to review the inventory, assess their capacity to provide DME items, and to confirm their credentials. We also hosted seminars for our members on how to get accredited before we submitted our bid.

C. Moreover, we insisted that all our providers be accredited by either The Joint Commission (JC), the Community Health Accreditation Program (CHAP), the HealthCare Quality Assn' on Accreditation (HQAA), or the Accreditation Commission for Health Care, Inc. (ACHC), four of the most prestigious and highly-respected accreditation agencies in the industry (CMS allowed providers to be accredited by any of 13 agencies, including the four listed above).

D. To avoid any risk that we would run afoul of federal antitrust laws – a concern about bidding networks that had been raised by CMS –



**de la O ▪ Marko ▪ Magolnick ▪ Leyton**
TELEPHONE 305/285-2000 3001 S.W. 3RD AVENUE, MIAMI, FLORIDA 33129 FACSIMILE 305/285-5555

Plaintiff retained the VGM Group, a national organization that provides support and guidance to Home Medical Equipment providers nationwide, to take all the bids from Plaintiff's individual providers (who did not share their bid prices with each other) and calculate Plaintiff's weighted network bid. VGM also was retained to oversee the gathering of all the financial information that Plaintiff's members had to submit, and to deliver those materials, in hardcopy form, to CMS in connection with Plaintiff's bid.

4. The providers that made up Plaintiff's network are set forth in the schematic attached hereto as Ex. A (one company withdrew from Plaintiff's group; *see* ¶ 12, below).

5. Chori Corp. (d/b/a Cobra Medical Equipment, Inc.; "Cobra"), a South Florida supplier in Plaintiff's network, secured Bidder No. 1000155 for Plaintiff.

## II. <u>CALCULATING PLAINTIFF'S NETWORK BIDS</u>.

6. VGM sent each of our primary providers detailed worksheets for every Product Category in the RFB, assessing capacity, overhead and desired Medicare reimbursement rate for each HCPC item within the Product Category.

7. After all providers sent VGM their completed worksheets, VGM reviewed the responses for accuracy, made suggestions about where to adjust desired reimbursement rates to best position Plaintiff for a successful bid, and – once that process was complete – generated a network composite bid for each Product Category.

8. Simultaneously, Plaintiff was ensuring that each provider submitted the financial information that had to be sent to CMS in hardcopy form along with the bid. To ensure that all needed documents were gathered, Plaintiff had a multi-layered process:


de la O ▪ Marko ▪ Magolnick ▪ Leyton
TELEPHONE 305/285-2000 3001 S.W. 3RD AVENUE, MIAMI, FLORIDA 33129 FACSIMILE 305/285-5555

A. VGM developed checklists, based on the final rules for the bidding competition, identifying each and every financial document needed.

B. All the providers gathered every document needed, and sent them first to Plaintiff's health care counsel, Javier Talamo, Esq. ("Talamo"). Once satisfied that every document was submitted by every provider, Talamo forwarded all the documents to VGM.

C. VGM again reviewed the documents, and ensured that every item on its checklist was supplied by every provider.

## III. SUBMISSION OF THE ELECTRONIC BID AND THE HARDCOPY MATERIALS.

9. After VGM meticulously and repeatedly pored over and reassessed each provider's worksheets, Plaintiff's network bids were finalized. On July 19, 2007, our bid was timely submitted electronically (the deadline was, at that point, July 20, 2007, but on July 20, it was extended in one of the multiple extensions of the bidding deadline).

10. On July 19, 2007, VGM sent Plaintiff's financial documents, in hardcopy form, to CMS via Federal Express Overnight Mail. VGM confirmed that the documents were received by VGM on July 20, 2007.

## IV. PLAINTIFF'S DISQUALIFICATION.

11. On Thursday, March 20, 2008, Plaintiff was advised by CMS that it had been disqualified. A copy of the disqualification letter is attached to this motion.

12. The next day (Friday, March 21, 2008), Jack Marquez – the president of Cobra – contacted CMS. Based on what he was told, we immediately assembled proof that (a) Coast-To-Coast Medical Equip., Inc. ("CTC") had previously withdrawn from Plaintiff's network, and that CMS had been advised of it and of the fact that their withdrawal would not change Plaintiff's bid, and (b) Plaintiff had submitted the allegedly



de la O ▪ Marko ▪ Magolnick ▪ Leyton
TELEPHONE 305/285-2000 3001 S.W. 3RD AVENUE, MIAMI, FLORIDA 33129 FACSIMILE 305/285-5555

missing financial documentation for CTC (2004, 2005 and 2006 income tax statement), Cobra (2005 income tax statement), Dade Medical, Inc. (2005 and 2006 income tax statement and credit score), Hometown Medical Equip. & Supplies, Inc. (2007 balance sheet), and R & T Medical Inc. (2004, 2005 and 2006 income tax statement).

13. On Monday, March 24, 2008, Marquez contacted CMS and gave it the foregoing information, and asked CMS to reconsider the disqualification. CMS said that it would take the matter under consideration and inform us of its decision within 30 days.

14. We contacted CMS often during that 30 day window for a status update.

15. On Monday, April 21, 2008, we received an email from CMS. It did not mention CTC or any of the allegedly missing financial documentation (except for one item) that had been the basis of our disqualification, but instead it set forth a *new* series of financial documentation that we allegedly hadn't furnished to CMS, and on that basis, CMS upheld our disqualification. A copy of CMS' email is attached to this motion.

16. Again, we confirmed that all the items CMS mentioned had, in fact, been sent to them. We explained to CMS in detail that Plaintiff had sent each item, and again asked CMS to reconsider its decision, but it refuses to do so without further explanation.

## V. <u>THE IMPACT OF DISQUALIFICATION ON PLAINTIFF</u>.

17. If Plaintiff remains excluded from the Medicare DME Program, its providers will hemorrhage financially, and many – perhaps most – will shut down. Some of these providers likely face financial ruin within 6 months to a year of exclusion.

18. There are no viable alternatives for the providers in Plaintiff's network. The client base for my company and other providers in Plaintiff's network are senior citizens, who overwhelmingly pay for their DME products via Medicare. If we remain excluded from the Medicare DME Program, the vast majority of these clients (if not all)


**de la O ▪ Marko ▪ Magolnick ▪ Leyton**
TELEPHONE 305/285-2000 3001 S.W. 3RD AVENUE, MIAMI, FLORIDA 33129 FACSIMILE 305/285-5555

will move to sources that are able to provide these products under Medicare, rather than remain with us and pay either out-of-pocket or via private insurance plans.

19. Moreover, if Plaintiff remains excluded when the Medicare contracts become effective on July 1, getting reinstated thereafter (via a favorable judgment in this Court) will not save our companies. By the time any such relief is awarded, the customers who patron South Florida Medical Equip. will have – of necessity – already migrated to "winning bidders" who can supply their DME products without interruption. Those lost customers aren't likely to come back. The same is true of other providers in Plaintiff's network. It is no exaggeration to say that July 1 is a crucial date for Plaintiff.

## VERIFICATION

I declare under penalty of perjury that the foregoing is true and correct.[2]

**DATED:** 06.17.08

RODOLFO HERNANDEZ, JR.



[2] *See* 28 U.S.C. § 1746.



de la O • Marko • Magolnick • Leyton
TELEPHONE 305/285-2000 3001 S.W. 3RD AVENUE, MIAMI, FLORIDA 33129 FACSIMILE 305/285-5555

CMS 10169A, ITEM #2, ATTACHMENT C

| PT# | NAME OF PRIMARY PROVIDERS | NSC# | NPI# |
|---|---|---|---|
| 1 | SOUTH FLORIDA MEDICAL | 0462570001 | 1629113162 |
| 2 | COBRA MEDICAL EQUIPMENT | 1123190001 | 1730189523 |
| 3 | A QUALITY MEDICAL SUPPLY | 0468600001 | 1063418267 |
| 4 | HOMETOWN MEDICAL | 5396190001 | 1982790275 |
| 5 | PEDICARE | 4056320001 | 1154345601 |
| 6 | CREATIVE MEDICAL SERVICE | 0562360001 | 1396841185 |
| 7 | LIMA MEDICAL EQUIPMENT | 1019850001 | 1689776551 |
| 8 | DADE MEDICAL | 0724540001 | 1407894348 |
| 9 | UNIVERSAL SUN | 1079570001 | 1245239086 |
| 10 | JAD MEDICAL EQUIPMENT | 1311280001 | 1619057775 |
| 11 | INTERAMERICAN SERVICES | 0996750001 | 1851330831 |
| 12 | LAM AND M MEDICAL EQUIP. | 1016700001 | 1255318077 |
| 13 | MEDICAL RESPIRATORY RENT | 0636820001 | 1780636464 |
| 14 | R.A. HOME MEDICAL EQUIP. | 4743430001 | 1326068107 |
| 15 | ALLSTATE MEDICAL RENTAL | 4671180001 | 1861505497 |
| 16 | COAST TO COAST MEDICAL | 1110270001 | 1902835754 |
| 17 | V & M MEDICAL SUPPLIES | 1133280001 | 1457345647 |
| 18 | DEPENDABLE MEDICAL | 1177670001 | 1881715571 |
| 19 | ALL FLORIDA MEDICAL SUPPLY,INC | 0963770001 | 1326150830 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | NAME OF SUB PROVIDERS | NSC# | NPI# |
| | | | |
| 21 | JORCYN MEDICAL SERVICES | 1047720001 | 1932101359 |
| 22 | SUPERIOR CARE MEDICAL | 1026280001 | 1669403358 |
| 23 | BI COUNTY MEDICAL | 4202610001 | 1023041803 |
| 24 | A & C MEDICAL RENTAL | 1312570001 | 1023101318 |
| 25 | DD & G RENTAL EQUIPMENT | 1190820001 | 1437155785 |
| 26 | DUBROCK MEDICAL EQUIP. | 5764450001 | 1972533891 |
| 27 | BAIZAN MEDICAL EQUIP. | | |
| 28 | TEBAR MEDICAL SUPPLIES | 4770270001 | 1912945940 |
| 29 | VERSAILLES HOME HEALTH | 5376610001 | 1922032068 |
| 30 | DOCTOR CHOICE | 0273280002 | 1386753580 |
| 31 | AMBULATORY AND PROFESSIONAL | 5305950001 | 1477573939 |
| 32 | DEPENDABLE MEDICAL SUPPLIES | 0839540001 | 1720019491 |

Exhibit A to Rodolfo Hernandez

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

| | | |
|---|---|---|
| ALL FLORIDA NETWORK CORP., Plaintiff, | ) | Case No. 08 – 441 C |
| vs. | ) | (Judge Lawrence M. Baskir) |
| THE UNITED STATES, Defendant. | ) | |

**AFFIDAVIT OF JACK MARQUEZ**

STATE OF FLORIDA )
)
CITY OF MIAMI )

I, JACK MARQUEZ, being duly sworn, deposes and says as follows:

1. I am the President of Chori Corp. (d/b/a Cobra Medical Equipment, Inc.; "Cobra"), a South Florida DME supplier in Plaintiff's network. Cobra joined Plaintiff, under a written contract, in order to bid, as part of a network, in Round One of the DMEPOS Competitive Bidding Program for the Miami-Ft. Lauderdale-Miami Beach-FL Competitive Bidding Area (the "South Florida CBA").

2. Acting as a provider in Plaintiff's network, Cobra secured Bidder No. 1000155, so that Plaintiff could participate in the South Florida CBA's Round One RFB.

3. Cobra carefully compiled the financial documentation that had to be submitted in hardcopy contemporaneously with our bid. I used VGM's checklist – and CBIC's final rules governing the bidding competition – to gather the documents.

4. I sent all the required documents to Plaintiff's counsel, specifically including Cobra's 2005 income tax statement.



**de la O ▪ Marko ▪ Magolnick ▪ Leyton**
TELEPHONE 305/285-2000 3001 S.W. 3RD AVENUE, MIAMI, FLORIDA 33129 FACSIMILE 305/285-5555

5. On July 19, 2007, I finalized Plaintiff's electronic bid exactly as VGM and Plaintiff had prepared it. A printed copy of the final bid is attached as Ex. A.

6. On Friday, 03.21.08, a day after Plaintiff was advised that it had been disqualified from Round One, I contacted CMS for details, and discovered that:

A. BSE-1 was based on CMS' finding that one of Plaintiff's providers – Coast-To-Coast Medical Equip., Inc. ("CTC") – was not eligible to participate in the bidding competition.

B. BSE-4 was based on CMS' claim that five members of Plaintiff's network had not submitted the financial information called for by the RFB: CTC (allegedly missing 2004, 2005 and 2006 income tax statement); Cobra (allegedly missing 2005 income tax statement); Dade Medical, Inc. (allegedly missing 2005 and 2006 income tax statement and a credit score); Hometown Medical Equip. & Supplies, Inc. (allegedly missing 2007 balance sheet); and R & T Medical Inc. (allegedly missing 2004, 2005 and 2006 income tax statement).

7. We advised each of the companies listed above about CMS' claim, and the companies double-checked their records.

8. Plaintiff quickly discovered that CMS was wrong as to all grounds for disqualification. As to BSE-1, Plaintiff had – months before – confirmed with CMS, in writing, that CTC had withdrawn from Plaintiff's network.

A. On 10.01.07, Plaintiff advised CBIC, in a letter delivered via Federal Express Overnight Mail (the "10.01.07 Letter"), that CTC "has informed the network that at they are withdrawing their request to participate in



de la O ▪ Marko ▪ Magolnick ▪ Leyton
TELEPHONE 305/285-2000 3001 S.W. 3RD AVENUE, MIAMI, FLORIDA 33129 FACSIMILE 305/285-5555

[Plaintiff's] network competitive bid," and the letter attached correspondence from CTC's counsel formally requesting withdrawal.

B. On October 1, 2007, in an email message to CBIC entitled "PROVIDER THAT WILL WITHDRAW FROM THE NETWORK," I attached a copy of a letter delivered via Federal Express Overnight Mail that same day (the "10.01.07 Letter"), advising CMS that CTC "has informed the network that at they are withdrawing their request to participate in [Plaintiff's] network competitive bid." In my email, I noted that, despite CTC's withdrawal, "[t]he bid numbers will remain the same."

C. On October 4, 2007, CBIC emailed me, acknowledging CTC's withdrawal, thanking Plaintiff "for notifying the CBIC of this matter regarding withdrawal from network membership and for the contact information provided." Copies of these materials are attached as Ex. B.

9. Also, I double-checked my records and confirmed that I did, in fact, submit the challenged documents in hardcopy. The other providers mentioned by CMS also confirmed that they submitted the challenged documents in hardcopy.

10. On Monday, March 24, 2008, I contacted CMS, gave it the information set forth in ¶¶ 8 – 9, and asked it to rescind the disqualification and consider Plaintiff's bid. CMS told me that it would review the file and respond within 30 days.

11. On Wednesday, March 26, 2008, I asked CMS when Plaintiff could expect a response, by what means, and what would happen if CMS concluded that Plaintiff had been wrongfully disqualified. That day, CMS responded via email:


de la O ▪ Marko ▪ Magolnick ▪ Leyton
TELEPHONE 305/285-2000 3001 S.W. 3RD AVENUE, MIAMI, FLORIDA 33129 FACSIMILE 305/285-5555

> Our records indicate you contacted our office on March 21, 2008, regarding financial documentation. Your issue has been forwarded to the financial analyst for the Competitive Bidding Implementation Contractor (CBIC) to verify every document received with your bidder number. CBIC will notify you by e-mail within thirty business days of the results of the research. We cannot advise of contract decisions until after the evaluation has been completed.

*See* Ex. C.

12. As the 30-day deadline drew near, and no decision had been issued, I accelerated my efforts to communicate with CMS.

A. On Wednesday, April 16, 2008, I spoke with a CMS representative about the status of the review, and asked to speak with a supervisor.

B. On Thursday, April 17, 2008, a CMS representative contacted me and said that the results of the review were forthcoming. I again asked to speak with a supervisor.

C. On Friday, April 18, 2008, a CMS supervisor to reassure me that CMS would issue a ruling by Tuesday, April 22, 2008.

13. On Monday, April 21, 2008, CMS sent its decision via email to Plaintiff. In it, CMS failed to mention (a) BSE-1 altogether or (b) any (but one) of the supposedly-missing documents that formed the basis of BSE-4.

14. Instead, CMS claimed that a *new,* different set of financial documents had not been furnished to CMS, and that for this reason, Plaintiff remained disqualified:

> [W]e have reexamined your bid(s), and have confirmed that 2005 income statement for Chori Corp.; 3 years income statements for Medical Respiratory Rentals, Inc.; and 3 years income statements for JAD Medical Equipment Inc. are missing. Therefore, we continue to be unable to accept these bid(s). When the program begins on July 1, 2008, Medicare will not reimburse you for furnishing these



de la O ▪ Marko ▪ Magolnick ▪ Leyton
TELEPHONE 305/285-2000 3001 S.W. 3RD AVENUE, MIAMI, FLORIDA 33129 FACSIMILE 305/285-5555

> competitively bid items to Medicare beneficiaries with the competitive bidding area(s).

A copy of this email is attached to the emergency motion for preliminary injunction.

15. Again, to be clear, I once again double-checked my records and confirmed that I did, in fact, submit the challenged documents in hardcopy.

16. If Cobra remains excluded from the Medicare DME Program, it will lose (a) roughly 40% of its client base (because referral sources will inevitably send their customers to a provider that is eligible for Medicare reimbursement, even if those same customers also have other possible partial payment sources – *e.g.*, Medicaid or private insurance – for certain items) and (b) and roughly $200,000.00 annually in revenue (and, for the reasons mentioned in the prior parenthetical, probably far more). With a loss of revenue this substantial, Cobra will certainly have to lay off employees, severely cut back services, is at great risk of having to shut down our business entirely within six months.

**VERIFICATION**

I declare under penalty of perjury that the foregoing is true and correct.[1]

**DATED:** 06.17.08

**JACK MARQUEZ**

[1] *See* 28 U.S.C. § 1746.



de la O ▪ Marko ▪ Magolnick ▪ Leyton
TELEPHONE 305/285-2000 3001 S.W. 3RD AVENUE, MIAMI, FLORIDA 33129 FACSIMILE 305/285-5555

- LOGOFF | PRINT | HELP

CMS COMPETITIVE BID SUBMISSION SYSTEM

User Email: jack0708@bellsouth.net
Bidder: ALL FLORIDA NETWORK CORP. ( 1000155 )

Home Form A Form B

Revenue Summary Customers Service Territory Volume Expansion Sub-Contractors Bid Sheet Certify Certification Statement

## SUB-CONTRACTOR USAGE (FORM B QUESTIONS 5C AND 5D)

**Supplier Name: CHORI CORP**
**CBA Name: Miami-Fort Lauderdale-Miami Beach, FL**
**Product Category: Hospital Beds and Accessories**

Listed below are the Sub-Contractors for this CBA and Product Categary. Select one of the Sub-Contractors to view/edit information for that C

| Legal Name | Expected Function |
|---|---|
| A & C Medical Rental | service Miami zip 33135 area |
| Ambulatory and Professional Medical Eq. | service Miami zip 33172 area |
| Baizan Medical Equipment, Inc | service Miami zip 33172 area |
| Bi County Medical Supply | Service Miami Zip 33016 Area |
| D.D. & G. Rental Equipment, Inc | service Coral Gables, FL area |
| Dependable Medical Supply | service Tamarac, FL area |
| Doctor's Choice, Inc | service Miami 33155 area |
| Doctors Medical Rentals Corp. | service Miami Lakes, FL area |
| Dubrock Medical Equipment, Inc | service Miami zip 33172 area |
| Jorcyn Medical Services, Inc. | Virginia Gardens, FL service area |
| R.A. Home Medical Equipment | service Miami zip 33135 area |
| Superior Care Medical Supplies | Service Medley, FL |
| Tebar Medical Supplies and Equipment | service Miami zip 33172 area |
| Versailles Home Health Medical Equipment | service Hialeah, FL area |

Click

**DO NOT USE THE BROWSER BACK BUTTON**
**This site is best viewed with a resolution of 1024x768 (or higher) and supports Microsoft Internet Explorer 6.0+.**
**JavaScript Must be Enabled.**

SECTION 508 COMPLIANT | US Department of Health & Human Services

© 2007 Competitive Bid Submission System. All Rights Reserved.

Exhibit "A" to Jack Marquez Affidavit

CMS COMPETITIVE BID SUBMISSION SYSTEM

Home Form A Form B

Supplier Business Networks Product Supplier CheckList Instructional Page Summary

Listed below are the network suppliers. Select one of the networks to view information for that Network.

| Network Supplier Name | Address | City | State | Zip Code | View | Delete |
|---|---|---|---|---|---|---|
| CHORI CORP. | 2351 NORTHWEST 93 AVENUE | DORAL | FL | 33172 | View | Delete |
| PEDI-CARE PLUS, INC. | 13359 SOUTHWEST 135 AVENUE | MIAMI | FL | 33186 | View | Delete |
| CREATIVE MEDICAL SERVICES,INC. | 8010 WEST 23 AVENUESUITE ONE | HIALEAH | FL | 33016 | View | Delete |
| A-QUALITY MEDICAL SUPPLY INC. | 2160 PALM AVENUE | HIALEAH | FL | 33010 | View | Delete |
| INTERAMERICAN SERVICES CORPORATION | 6801 NORTHWEST 77 AVENUESUITE 106 | MIAMI | FL | 33166 | View | Delete |
| MEDICAL RESPIRATORY RENTALS, INC. | 1928 NORTHWEST 79 AVENUE | DORAL | FL | 33126 | View | Delete |
| COAST TO COAST MEDICAL EQUIPMENT | 2887 SOUTHWEST 69 COURT | MIAMI | FL | 33155 | View | Delete |
| LIMA MEDICAL EQUIPMENT, INC. | 2891 WEST 2 AVENUE | HIALEAH | FL | 33010 | View | Delete |
| ALL FLORIDA MEDICAL SUPPLIES INC. | 601 NORTH CONGRESS AVENUEBLDG 6 UNIT 606 | DELRAY BEACH | FL | 33445 | View | Delete |
| R & T MEDICAL INC. | 879 SW SOUTH MAREDA BLVD | PORT ST LUCIE | FL | 34983 | View | Delete |
| V & M MEDICAL SUPPLY, INC. | 4701 PALM AVENUE | HIALEAH | FL | 33012 | View | Delete |
| ALLSTATE MEDICAL RENTAL CORP. | 13990 SOUTHWEST 139 COURT | MIAMI | FL | 33186 | View | Delete |
| LAM AND M MEDICAL EQUIPMENT CORP. | 9537 SOUTHWEST 40 STREET | MIAMI | FL | 33165 | View | Delete |
| JAD MEDCIAL EQUIPMENT INC. | 12901 WEST OKEECHOBEE ROADBAY F-2 | HIALEAH GARDENS | FL | 33016 | View | Delete |
| EL SOL UNIVERSAL INC | 1795 WEST 8 AVENUE | HIALEAH | FL | 33010 | View | Delete |
| DADE MEDICAL INC. | 931 SOUTHWEST 122 AVENUE | MIAMI | FL | 33184 | View | Delete |
| HOMETOWN MEDICAL EQUIPMENT & SALES INC. | 8366 NORTHWEST 66 STREET | MIAMI | FL | 33166 | View | Delete |
| SOUTH FLORIDA MEDICAL EQUIPMENT, CO. | 10540 NORTHWEST 29 TERRACE | DORAL | FL | 33172 | View | Delete |

Click ADD to add a New Network Supplier.

DO NOT USE THE BROWSER BACK BUTTON

This site is best viewed with a resolution of 1024x768 (or higher) and supports Microsoft Internet Explorer 6.0+. JavaScript Must be Enabled.

SECTION 508 COMPLIANT U.S. Department of Health & Human Services

© 2007 Competitive Bid Submission System. All Rights Reserved.

LOGOFF | PRINT | HELP

CMS COMPETITIVE BID SUBMISSION SYSTEM

User Email: jack0708@bellsouth.net
Bidder: ALL FLORIDA NETWORK CORP. ( 1000155 )

Home Form A Form B

Revenue Summary Customers Service Territory Volume Expansion Sub-Contractors Bid Sheet Certify Certification Statement

## SUB-CONTRACTOR USAGE (FORM B QUESTIONS 5C AND 5D)

**Supplier Name: CHORI CORP**
**CBA Name: Miami-Fort Lauderdale-Miami Beach, FL**
**Product Category: Hospital Beds and Accessories**

Listed below are the Sub-Contractors for this CBA and Product Category. Select one of the Sub-Contractors to view/edit information for that C

| Legal Name | Expected Function |
|---|---|
| A & C Medical Rental | service Miami zip 33135 area |
| Ambulatory and Professional Medical Eq. | service Miami zip 33172 area |
| Baizan Medical Equipment, Inc | service Miami zip 33172 area |
| Bi County Medical Supply | Service Miami Zip 33016 Area |
| D.D. & G. Rental Equipment, Inc | service Coral Gables, FL area |
| Dependable Medical Supply | service Tamarac, FL area |
| Doctor's Choice, Inc | service Miami 33155 area |
| Doctors Medical Rentals Corp. | service Miami Lakes, FL area |
| Dubrock Medical Equipment, Inc | service Miami zip 33172 area |
| Jorcyn Medical Services, Inc. | Virginia Gardens, FL service area |
| R.A. Home Medical Equipment | service Miami zip 33135 area |
| Superior Care Medical Supplies | Service Medley, FL |
| Tebar Medical Supplies and Equipment | service Miami zip 33172 area |
| Versailles Home Health Medical Equipment | service Hialeah, FL area |

Click

**DO NOT USE THE BROWSER BACK BUTTON**
**This site is best viewed with a resolution of 1024x768 (or higher) and supports Microsoft Internet Explorer 6.0+. JavaScript Must be Enabled.**

SECTION 508 COMPLIANT | U.S. Department of Health & Human Services

© 2007 Competitive Bid Submission System. All Rights Reserved.

CMS COMPETITIVE BID SUBMISSION SYSTEM

Category 1 Oxygen